P. Q. BOND v. CHARLES WHITE.

1. COUNTY OFFICE; *Vacancy, how filled; Statutes Construed.* Sections 57 and 59 of the general election law, (ch. 36, Gen. Stat.,) providing for the temporary filling of vacancies in certain offices by appointment, and that every such vacancy shall be filled by *election* at the "general election" held next after the occurring of the vacancy, are constitutional and valid.

2. ———— *Term of Appointee.* A person appointed by the governor to fill a county office, holds such office only until the qualification of a successor elected at the next general election after such vacancy occurs.

3. SHERIFF; *Regular Term of County Officers; Vacancy.* Section 3 of article 9 of the constitution fixes the duration of the *regular term* of sheriffs and other county officers at two years, and has no bearing upon the question of a vacancy. Whenever a vacancy occurs there is an "unexpired term" to be filled; and said section neither determines nor limits such unexpired term, nor does it affect the manner of filling it.

*Original Proceedings in Quo Warranto.*

IN June, 1871, *Bond* filed his petition in this court claiming to be entitled to the office of sheriff of Montgomery county, and to oust defendant *White* therefrom, alleging that said *White* had usurped and intruded himself into said office and unlawfully withheld it from plaintiff. *White* answered, and plaintiff demurred. The facts are fully stated in the opinion. *White* claimed the office by virtue of an appointment thereto by the governor in April 1870; and the question was, whether under his said appointment he held only until the vacancy could be filled by election in November, 1870, or for the whole of the unexpired term.

*A. L. Williams*, for plaintiff:

It is the theory and policy of our constitution and laws that public offices be filled by *election*, by the *people*. Appointments by the executive, or by any other officer, are only contemplated in case of death, resignation, removal, etc., and then only that the *office* may not become useless for want of an *officer* to perform its duties.

Persons holding by appointment hold only until the "next general election," at which time the office is to be again filled by election.  Constitution, art. 9, § 3; art. 3, § 11; art. 2, § 19. Gen. Stat., ch. 36, §§ 57, 58, 59, p. 418; also, pp. 427, 428, §§ 1, 2, and 5.  Laws of 1870, ch. 111, § 1, p. 229.

This is the view taken by this court in the case of *The State ex rel. Watson, v. Cobb*, 2 Kas., 32.  The reasoning of the court in that case, (opinion, pp. 53, 54, 56,) applies with great force and pertinency to the case at bar, and must be decisive of the question.  The fact that that was a *judicial* and this is a *ministerial* office can make no difference.

Bruner's failure to qualify caused a vacancy in the office of sheriff of Montgomery county; § 179 ch. 25, Gen. Stat.; *State v. Matheny*, 7 Kas., 327.  White's appointment was only until the then next general election; ch. 111, Laws of 1870.  Lawson was legally elected as the successor of Bruner, to hold for the unexpired term; § 59, ch. 25, Gen. Stat.; ch. 111, Laws of 1870.  Lawson's resignation caused another vacancy, and Bond was legally appointed, and is entitled to the office, and to judgment of ouster against White.

*W. C. Webb*, and *J. D. McCue*, for defendant:

1. The term of office, for all county officers, is prescribed by § 3 of art. 9 of the constitution.  The statute provides for their *election*, for the regular term, and classifies them.  Sheriffs are elected in 1869, 1871, etc.; §§ 1 and 2, pp. 427, 428, Gen. Statutes.  The term prescribed is two years, and it is not possible for the legislature to alter or change it: *Comm'rs of Leavenworth Co. v. Latta*, 5 Kas., 688.  And see also cases in 2 Wend., 266; 11 id., 132, 511; 2 Wis., 787; 13 id., 168.

Our constitution nowhere mentions an "unexpired term" in a *county* office; and failing to do so, the logical deduction from the language employed in § 3 of art. 9, "*All* county officers *shall hold* their offices for the term of two years," is, that all such officers, no matter how or when chosen or elected, should hold for the term designated.  But other provisions of the constitution require the legislature to prescribe the *manner* of

choosing county officers, and provide that all laws of a general nature shall have a *uniform* operation throughout the State. These provisions must all be considered together; and by doing so, it will be seen that § 3 of art 9 has reference to the regular term which by the statute is to be filled at every second general election by the people, and not to the term of an officer appointed merely to fill a vacancy. But *elections* must be uniform, and for an uniform term. There cannot be *two* modes for filling the same office for the same term. To avoid the public inconveniences of a vacancy or interregnum, where the incumbent dies or resigns, *appointments* are necessary. To fill the same vacancy by *election* would destroy uniformity, and produce great confusion besides, especially when the vacancy happened in the second year of the term, as in such case *two* persons would have to be chosen, one for the unexpired term of six weeks, and one for the regular term of two years. To preserve uniformity, elections for sheriff can be held only once in two years, and whenever chosen by election such officer must be chosen for the full term of two years. Bruner was chosen at the term fixed by general law, in 1869, for the term from the second Monday in January 1870 to the second Monday in January 1872. His successor *by election* cannot be legally chosen until November, 1871. White therefore is entitled under his appointment to the office for the whole of Bruner's unexpired term.[*] 4 Texas, 400.

[* REPORTER'S NOTE.—Mr. WEBB, one of the counsel for defendant, on the hearing of this case made an argument amplifying the propositions stated in the brief. A portion of said argument is as follows:

The plaintiff BOND claims to be sheriff of Montgomery county by virtue of an appointment by the governor. If there was a *vacancy* in the office when he was appointed, he is of course entitled to recover the office. We contend that the office was not vacant, but that WHITE was and is legally in possession of the office as the rightful incumbent thereof. Bruner was elected to the office at the time prescribed by law, (§ 2, p. 428, Gen. Stat.,) for the term of two years from the second Monday of January, 1870. It is admitted that his refusal to qualify as provided by law, (§§ 99, 100, 179, ch. 25, Gen. Stat.,) created a vacancy, and that White was legally appointed in April 1870 to fill such vacancy; and the question is, How long is White entitled to hold under such appointment? ·

We contend that White is entitled to the office and to exercise its duties for the whole of Bruner's unexpired term, at the least. Reference is made by the plaintiff's counsel to the case of *The State ex rel. Watson v. Cobb*, 2 Kas., 32, 53. The case involved the right to the office of chief justice of this court. Two questions were decided, 1st, that all vacancies in judicial offices were to be filled by election—vacancies in the office of justice

2. But §§ 57 and 59 of the general election law, (Gen. Stat., pp. 418, 419,) are cited as authorizing an *election* for the unexpired term. So far as said sections can be held to apply to the election of *county officers* they are void. It is said they are supported by the authority conferred upon the legislature by

---

of the peace at the first township election occurring more than thirty days after the happening of the vacancy, and vacancies in the offices of probate and district judge, and justices of the supreme court, at the first general (or November) election occurring more than thirty days after the vacancy shall have happened—the governor's appointee, if any, to hold only until such election should occur and the judge or justice elect should qualify; 2d, that there was no such vacancy existing at the November election in 1862 as could be filled by election—and judgment was given against the relator. But the case has no application here. The office in controversy here is not *judicial;* and besides, § 11 of art. 3 of the constitution, on which the case of *The State ex rel. Watson v. Cobb,* was decided, expressly authorizes the appointment of judicial officers to fill vacancies, and provides that the person appointed to a judgship shall hold "until the next regular election," etc., while there is no such constitutional provision respecting county offices.

Sec. 3 of art. 9 of the constitution must control this case. It provides that "All county officers shall hold their offices for the term of two years, and until their successors shall be qualified." It will be noticed that this section does not provide that county officers shall be *elected* at all. There is no such provision in the constitution. The *mode* of selecting them is left wholly to the discretion of the legislature. The only limitation to this power is with respect to the *term* of the office. That must be "two years." But whatever mode of filling the offices is adopted it must be "uniform throughout the State;" (§ 17, art 2, Const.) They are not to be elected in one county, appointed by the governor for another, nor by the governor and senate for still another. A "uniform rule" is to be adopted, and the legislature has said that rule shall be *election* by the people: Ch. 31, laws of 1861; Comp. Laws, p. 503; Gen. Stat., p. 427, §§ 1, 2. It must be held therefore that this constitutional provision (§ 3, art. 9,) applies in every case of an *election* to a county office, and the person so chosen, (no matter in what year,) "shall hold his office for the term of two years." There is nothing in the section or article relating to filling vacancies; and it must be held to apply to, and to determine, the term of all persons chosen to a county office in accordance with the general rule prescribed for filling such offices. This rule is, as already shown, by election. And this is in accordance with the decision of this court in *Comm'rs of Leavenworth v. Latta,* 5 Kas., 688, wherein the court decided that "County commissioners are county officers, and *consequently hold their offices for two years* under § 3 of art. 9 of the constitution;" and that ch. 45, laws of 1867, and § 9, ch. 25, Gen. Stat., providing for the election of commissioners for Leavenworth county, "so far as they limit the term of any of the county commissioners to *one* year, are in contravention of the constitution, and are of no effect." Apply this to this case: A sheriff elected in the odd year, and a sheriff elected in the even year, (both having qualified as provided by law,) are alike county officers, equal in right, equal in authority. They are both "county officers," whether they have served a day, or a month, or a year; and their constitutional right "to hold their offices" for the full term of *two years* is the same in both cases, and cannot be abridged.

And such has been the decision in other States, and under constitutional provisions less perspicuous and certain than ours. The constitutions of New York and Wisconsin have precisely the same provision. Let us place it by the side of ours:

NEW YORK AND WISCONSIN: "Sheriffs, coroners, registers of deeds, and district attorneys shall be chosen by the electors of the respective counties once in every two years, and as often as vacancies shall happen."

KANSAS: "All county officers shall hold their offices for the term of two years, and until their successors shall be qualified."—§ 3, art. 9.

the last clause of § 19 of art. 2 of the constitution. Public exigencies require that vacancies shall be filled immediately. "Special elections," that is, any elections other than the general election in *November*, for electing county officers, are not known to our laws; hence *appointments* are necessary, and

It will be seen that in Kansas county officers are to be chosen in an uniform manner, and for a certain, fixed term. No reference is made to "vacancies;" but *all* county officers, chosen in the same manner, are to hold for the same term. In New York and Wisconsin *vacancies* are to be filled by election, by authority of the same section which fixes the regular term. It would seem that under such provision the legislature *might* provide for special elections for filling "unexpired terms." But the courts of both the States named held otherwise. In the case of *The People ex rel. Galup v. Green*, 2 Wend., 266, it was held that in all cases in which a person was *elected* to the office of sheriff, whether at a general election or at a special election "to fill a vacancy," his term would be two years. See also 11 Wend., 132, 511. The same question was before the Wisconsin court in 1854, in *Attorney General v. Brunst*, 3 Wis., 787. Referring to the case of *Galup v. Green*, 2 Wend., 266, the Wisconsin court say: "This rule of construction leaves the term of office to commence at different periods in the several counties, accordingly as a vacancy may occur in the one or the other at different times. By our constitution this provision comprises not only the office of sheriff, but that of coroner, district attorney, and register of deeds, involving a degree of inconvenience which ought to give to the argument deduced therefrom the utmost weight. But we can find no means of escape from the plain and palpable meaning of the language used; and the reasoning of Mr. Justice Marcy, in the opinion " in the case of *Galup v. Green*, " seems to be unanswerable." See also 13 Wis., 168; 12 Cal., 378; 14 id., 180; 39 Mo., 89: 9 Minn., 283.

In the case at bar, Bond's right depends upon the validity of the election for sheriff in November, 1870. If Lawson was entitled to the office upon his election and qualification, then he would be entitled to it for *two years;* and that being the constitutional term, which by law uniformly commences on the second Monday of January next after the election, his term would commence on the second Monday of January, 1871—thus changing the time for electing sheriffs in Montgomery county, from the years 1869, 1871, etc., to the years 1870, 1872, etc., contrary to the express provisions of the statute: Gen. Stat., p. 428, § 2.

Uniformity is desirable. Wherever there is a want of uniformity great public inconvenience results. The legislature understood this, and intended to establish a safe and convenient rule of uniformity in dividing county officers into two classes, and providing for the election of one class at the general election in the odd years, and the other class at the general election in the even years: ch. 31, laws of 1861, p. 147, §§ 1 and 2; Comp. Laws, p. 503. This act was passed at the first session of the *State* legislature, and was approved May 22, 1861. And by another act approved the next day, May 23d, (laws of 1861, p. 143, Comp. Laws, p. 500, § 40,) it was provided that "the regular term of all county officers shall commence on the second Monday of January next after the election." Thus *uniformity* in election, and in commencement of term of office, were established. Sheriffs were in the class to be chosen in the odd years, and have so remained: Gen. Stat., p. 428, § 2. Bruner was elected in the odd year, 1869. The term for which he was chosen does not expire until January, 1872. The election in 1870 was void. The office was not vacant. White had been appointed to fill the vacancy caused by Bruner's neglect to qualify, and he is entitled to serve out the whole of the unexpired term for which Bruner was elected. True, the rule is that officers are to be elected; but when county officers are elected it is for two years. There is no exception. When appointed it is for

have been authorized.   So far the provisions of said §§ 57 and 59 are valid.   So far as said sections limit or restrict the term of any *duly elected* county officer to an "unexpired term," or any term less than two years, they are void; hence, so far as they authorize *an election* for any county office at a time other

the unexpired term, and the whole of it, and there is no exception unless the constitution has otherwise expressly provided.  Thus·uniformity and harmony are preserved.

But we are referred to §§ 57 and 59 of the general election law, (ch. 36, Gen. Stat.,) as prescribing a contrary rule; and § 19 of art. 2 of the constitution is cited as furnishing the authority for enacting said §§ 57 and 59.   This constitutional provision is as follows:

"It (the legislature,) shall have power to provide for the election or appointment of all officers, and the filling of all vacancies, not otherwise provided for in this constitution."

When analyzed, this clause will be found to contain two distinct propositions, thus: 1st.-The legislature shall have the power to provide for the *election* or *appointment* of all officers not otherwise provided for in this constitution.   And 2d.-The legislature shall have the power to provide for the *filling of all vacancies* not otherwise provided for in this constitution.   The *first* proposition deals simply with the *manner* of choosing officers.   If the constitution has not determined the question, by saying that an officer shall be *elected*, or that he shall be *appointed*, the legislature may prescribe the manner or mode, as it shall deem proper.   The *term of office* is not within the delegated power, nor in anywise affected by this clause.   The question is one of *manner*, and manner only; and the legislature exercised this power with respect to sheriffs when it provided that *all county officers shall be elected* once in two years, (§§ 1 and 2, pp. 427, 428, Gen. Stat.,) the constitution not having prescribed the mode of choosing such officers.   The *second* proposition deals with the question of *vacancies in offices*.   The legislature is authorized to provide for *filling* vacancies, and to prescribe the *manner* of selecting the officer for such purpose, in all cases where the constitution has not provided therefor.   Now the constitution is silent as to filling vacancies in *county* offices, (except the office of probate judge.)   The legislature has exercised its power here, also; as to some county offices by name, see §§ 42, 64, 78, 89, of ch. 25.   Those not named are covered by § 57 of ch. 36, except the office of sheriff.   By § 102, ch. 25, in case of vacancy in the office of sheriff the undersheriff, if any, was authorized to serve the unexpired term; if there was no undersheriff, the case came within the operation of § 57, ch. 36.   But said § 102 was amended February 28, 1870, (laws 1870, ch. 111, p. 229;) and by such amendment a vacancy in the office of sheriff can be filled at once by executive appointment, and such appointee "shall hold his office until his successor is elected and qualified."   This being the later enactment, and there being no provision for electing *sheriffs* except in the *odd* years, it would seem to follow that the case of sheriffs was made an exception to the operation of §§ 57 and 59 of ch. 36, and that no *election* can be held for sheriff in Montgomery county until November, 1871, and then for the regular term only.   But if such was not the intendment and fair construction of the act itself, then so much thereof, and so much of §§ 57 and 59 of ch. 36, as pretend to authorize an election for sheriff in 1870 *are void*. "Why?"   They provide for an *election* for the same office oftener than "once in two years," in opposition to the uniform rule for electing county officers, and in disregard of the constitutional guaranty that all sheriffs, chosen in the same *manner*, shall hold for the *same term*.   "But is it not competent for the legislature to provide for filling all vacancies by *election?*"   Certainly; but they have not done so; and if they should the consequence would be, that every such election and qualification thereunder would *start a new term* of two years, thus producing non-uniformity, and great public inconvenience; or, if such "new term" were not started, the public inconvenience would be increased

Brief of Defendant.

than that designated in §§ 1 and 2, pp. 427, 428, Gen. Stat., they are void, unless such election starts a "new term"—a regular term of two years—from the second Monday in January next after the election; and as there is no express warrant for such change in the commencement of the term of office, it follows that the election of Lawson in 1870 was unauthorized and void. As Lawson had no right to the office, Bond has none.

3. But again: Bond has no right to the office in any event. To give him any right, Lawson's resignation must have produced a vacancy. It is alleged in the answer and admitted by the demurrer that Lawson never obtained possession of the office. He was elected, and he qualified; but White did not and would not surrender, and Lawson never tried to get possession. He resigned—but at, and before, and upon his resignation *White was in possession of the office, performing its duties;* hence no vacancy, and hence Bond's appointment was void. 25 Cal., 95 The right of the governor to appoint

---

by requiring *two* elections for the same office whenever the vacancy happened in the second year of the term, *one* to fill the vacancy for six or seven weeks, the *other* for the regular term of two years; and such election would require special mention in the proclamation, and all *ballots* would have to specify whether the person named thereon was voted for for the "unexpired term," or for the "regular term," and the votes must be returned and canvassed accordingly. A case in point: If the plaintiff Bond is entitled to the office under his appointment, he will hold only until the "next general election," when the vacancy must, under §§ 57. 59, be filled by the election of some person who will hold for about six weeks! and at the same general election (1871) a sheriff must be elected for the regular term. If only *one* person is elected, and the ballots fail to designate the full term or the unexpired term, will such person be entitled to the office "immediately on qualifying," as provided in § 59? and if so, can he hold for the unexpired term, and the full term, both? or will there be another vacancy, to be filled by election for the then unexpired term in November, 1872? Uncertainty and confusion are sure to result, if the election for sheriff in 1870 was valid, whether it starts a new term or not.

Section 5 of the act prescribing the time for holding elections, (Gen. Stat., p. 428,) is cited, in case it shall be held that an election of a sheriff as for a vacancy in the even year starts a new term of two years, as authorizing a change from the time prescribed by § 2 of said act. But said § 5 has reference only to such regular elections for a full term as may be authorized in other and different years, as in the case of district judges. Section 3 of said act provides that in 1868, and every fourth year thereafter, there shall be an election "in each judicial district" for the election of a district judge. This would apply to all the districts; yet the law creating the sixth, seventh, eighth, and ninth districts fixed the election for those districts for 1867, 1871, etc.; and in the tenth district, the judge is to be chosen in 1869, 1873, etc.; and in the eleventh, in 1870, 1874, etc. Said § 5 has reference to such cases as these, and has no reference to any case of vacancy.]

depends whether there is a vacancy or not. Ch. 111, Laws of 1870; 12 U. S. Digest, title, " *Office and Officer.*"

The opinion of the court was delivered by

BREWER, J.: The facts of this case, so far as they are necessary to a right understanding of the questions involved, are these: At the general election in November, 1869, one Daniel Bruner was elected sheriff of Montgomery county. By virtue of such election he became and was entitled to hold such office until the second Monday of January, 1872. He however failed to qualify, whereby the office became vacant, and in April, 1870, the defendant was appointed by the governor to fill such vacancy. He qualified and entered upon the discharge of his duties as sheriff. At the general election in November, 1870, candidates for the office of sheriff of that county were voted for, and one Thomas Lawson received a majority of the votes cast, was awarded the certificate of election, and duly qualified. Failing to obtain possession of the office, he resigned, and plaintiff was appointed to fill the vacancy claimed to exist by virtue of such resignation. He qualified, but defendant refused to surrender the office; and this action is brought, an original proceeding in this court, to oust the defendant and place plaintiff in possession. The question arises upon the demurrer filed by plaintiff to the answer of defendant, and is therefore purely a question of law.

Was the election in November, 1870, for the office of sheriff rightfully held? If it was, then by it Lawson became entitled to the position, and upon his resignation, and the appointment of this plaintiff, the latter would also become entitled to it. The 1. County office, filling vacancy, statute construed. last clause of section 19 of art. 2 of the constitution, reads: "It" (the Legislature,) "shall have the power to provide for the election or appointment of all officers, and the filling of all vacancies, not otherwise provided for in this constitution."

There is no provision in the constitution for filling a vacancy in the office of sheriff. We must therefore look to the statutes to see how the legislature has said it should be filled. Sections

57, 58 and 59 of general election law, (Gen. Stat., p. 418, 419,) are as follows:

"SEC. 57. All vacancies in any state or county office, and in the supreme or district courts, unless otherwise provided for by law, shall be filled by appointment from the governor until the *next general election* after such vacancy occurs, when such vacancy shall be filled by election.

"SEC. 58. The *regular term* of office of all state, district and county officers, and of the justices of the supreme court, shall commence on the second Monday of January next after the election, except as otherwise provided by law.

"SEC. 59. Any of the said officers that may be elected or appointed to fill vacancies may qualify and enter upon the duties of their office immediately thereafter, and, *when elected*, they may hold the same during the *unexpired term* for which they were elected, and until their successors are elected and qualified; but, *if appointed*, they shall hold the same only until their successors are elected and qualified."

The term "general election" has both a constitutional and statutory definition, and means the election held annually on the Tuesday succeeding the first Monday in November. Const., art. 4, § 2; Gen. Stat., p. 1000, 26th clause of § 1. The mean-

2. Person appointed holds only until the next general election.

ing of the sections above quoted is plain and obvious. No language could be used which would more clearly express the object which the legislature intended to accomplish. In case of a vacancy the governor was to designate some one to discharge the duties of the office until the succeeding fall election, at which time the people were to elect a successor. The appointee could hold only until the fall election, and the qualification of the officer then elected. The officer elected held the unexpired term. This construction is supported, if support it needs, by the reasoning in the case of *The State, ex rel. Watson, v. Cobb*, 2 Kas., 53, where the court say: "The general principle is that the judiciary are elective. The exception made to meet possible necessities, is by appointment to fill vacancies, but that appointment is expressly limited and must expire at the next regular election."

Probably if the three sections above quoted were all that bore upon this question there would be little controversy. But

it is claimed that section 2 of the act prescribing the time for holding elections, (Gen. Stat., p. 428,) compels a different construction of the sections we have quoted. That reads: "On the Tuesday succeeding the first Monday in November, 1869, and on the Tuesday succeeding the first Monday in November in every second year thereafter, there shall be held a general election for the election in each county of sheriff," etc. From this it is contended that the time for the election of sheriff is in 1869, 1871, 1873, and so on; that there is no warrant for an election of sheriff in 1870, and that an election without warrant is void, and confers no title. Furthermore it is claimed that the constitution fixes the term of office of sheriff at two years, and if an election was rightly held in 1870 the time for electing sheriffs in that county would be changed from the odd to the even years, and thus great confusion might in time be created throughout the state, some counties electing sheriffs in the even and some in the odd years, a result which was evidently not contemplated by the legislature. In regard to the first objection, section five of the same act declares that "the provisions of this act shall not apply when there are special provisions in any other statute fixing the time for the election of any of the officers above named;" and section 57 heretofore quoted provides that there shall be an election to fill the vacancy at the next general election after such vacancy occurs. It matters not whether such general election is in the even or the odd years, the vacancy is, by this section, then to be filled by election. In regard to the second objection, the fact that the result suggested might ensue would be no ground for avoiding the legitimate construction of the language used by the legislature. While uniformity in all such matters is desirable, a failure to secure it is no argument against the validity of the legislation, and no reason for construing away its obvious meaning. We do not desire to be understood as intimating that such a result would ensue. Far from it. We simply pass that question to be considered in some case in which it fairly arises. Here it is immaterial. For if Lawson became entitled by the election in 1870 to the office, he was entitled to it for at least one year

Resigning during the year, the appointee of the governor becomes entitled to it until and·only until the coming fall election, for the same decision which sustains the election last November compels another this fall.

But again, it is urged that, as the constitutional term of office of sheriffs is two years, and as the constitution is silent in reference to unexpired terms, the appointment by the governor fills the vacancy in the office for the balance of the term;

3. Sheriff; term of county officers; vacancy. and the office being filled, there is no room for an election until the full term has expired. The language of the constitution is this—art. 9, § 3: "All county officers shall hold their offices for the term of two years, and until their successors shall be qualified." We understand this language as fixing the duration of the regular term. It is not within the power of the legislature to create a county office and fix the term of that office at any other period than two years. We do not understand that section as bearing upon the question of a vacancy at all. Whenever a vacancy occurs, there is an unexpired term to be filled, and this section neither determines, limits, nor affects the manner of filling that unexpired term. That question is to be settled by the legislature, by virtue of the powers conferred by section 19·of art. 2, heretofore quoted. It has declared that an appointment by the governor shall be good only until the succeeding general election and the qualification of the party elected. We cannot add to that, and say it shall hold good for the unexpired term. That would be giving a power to the gubernatorial appointment which the legislature has failed to do.

Whether an *election* starts a "regular term" to running, we forbear to decide, for reasons heretofore given. An appointment obviously does not. The defendant's right to the office having terminated on the election and qualification of Lawson, by the resignation of the latter and the appointment and qualification of the plaintiff he is entitled to the office, and judgment must be entered accordingly. It is proper to state that the allegations of the petition and answer exclude any applica-

tion of sections 101 and 102 of the act in relation to counties and county officers to this case.

All the Justices concurring.