GEORGE A. HAGERTY v. B. C. ARNOLD, *et al.*

1. OFFICERS OF NEW COUNTIES; *Term of Office; Vacancies.* On the 10th of April 1872 the governor, having received the requisite preliminary papers preparatory to the organization of the county of Harvey, appointed commissioners and clerk for that purpose, as the statute requires. On the 20th of May thereafter an election was held at which all the county officers were elected. At the succeeding general election all the county officers were elected, and among them C. A. Tracy was elected sheriff. At the general election in 1873 the plaintiff was elected sheriff: *Held,* that Tracy was elected to fill the unexpired term until the time provided by the general law for the election of sheriff should arrive.

2. COUNTY OFFICERS; *Constitutional Term.* The provisions of sec. 3, art. 9 of the constitution that "All county officers shall hold their offices for the term of two years, and until their successors shall be qualified," applies only to the regular term of the office, and not to vacancies, or exceptional cases.

3. ———— *Officers in New Counties.* The legislature has the power to say how county officers shall be elected, and when their terms shall commence, and to make that commencement uniform throughout the state; and to provide how vacancies shall be filled, and how the officers of a newly-organized county shall be selected until the time when such offices are filled according to the provisions of the general law.

## *Original Proceedings in Mandamus.*

HAGERTY, claiming to have been elected to the office of sheriff of Harvey county, at the general election held in November 1873, for the term of two years, to commence in January 1874, commenced proceedings in this court on the 21st of November 1873, in his own name as plaintiff, to compel the board of county commissioners and the county clerk of said Harvey county to canvass the votes cast at said election for county officers. An alternative writ was granted and issued. After reciting the facts at length, (which are sufficiently stated in the opinion,) said writ is as follows:

"Now therefore, we being willing that speedy justice may be done in the premises, do command and require you the said defendants, *B. C. Arnold, A. G. Richardson,* and *T. S. Floyd,* as county commissioners of the said county of Harvey, and you the said defendant *H. W. Bailey,* as county

clerk of the said county of Harvey, and each of you, to meet at the office of the county clerk of the said county of Harvey on the 28th day of November, 1873, at the hour of 10 o'clock in the forenoon, and that then and there, as such county commissioners, you the said *B. C. Arnold, A. G. Richardson*, and *T. S. Floyd*, proceed to open the several returns of said election made to said office of county clerk, and make due canvass thereof, and from such returns you then and there determine the persons who have received the greatest number of votes at said election for the said several county offices aforesaid, and reduce such determination to writing, and sign the same as such county commissioners; and we do command and require you the said defendant *H. W. Bailey*, as such county clerk of said county of Harvey, as soon as said commissioners have determined the persons who have received the highest number of votes at said election for said several county offices, to make out, sign, certify, and deposit in your said office an abstract of the votes cast at said election for said several county offices of the said county of Harvey; or, that in default thereof, you the defendants, and each of you, show cause, if any you have, to the supreme court of the state of Kansas, by the 6th day of January, 1874, why you have not done as herein commanded and required, and have you then and there this writ, with your return thereon.

"Witness the Hon. SAMUEL A. KINGMAN, chief justice of the supreme court of the state of Kansas, at chambers, at the city of Topeka, this 21st day of November, 1873.

[SEAL.]          "A. HAMMATT, *Clerk Supreme Court.*"

The allowance of said writ was indorsed on the back thereof, (code, § 693,) as follows:

"The within writ of mandamus allowed and granted by me this 21st day of November, 1873.

"S. A. KINGMAN, *Chief Justice*
*Of Supreme Court of Kansas.*"

*Arnold* and *Floyd*, commissioners, and *Bailey*, county clerk, moved to quash the writ as to all the county offices except the office of sheriff, because the plaintiff *Hagerty* was a private person, having no interest in any office other than that of sheriff; and as to the office of sheriff, they made a return, admitting the facts as alleged, but claiming that the election of *Hagerty* as sheriff of said county, in the year 1873, was

void, said office having an incumbent, duly elected and qual-
ified, whose term did not expire until the second Monday of
January, 1875.    Defendant *Richardson* made a separate re-
turn, the substance of which is stated in the opinion, *infra.*
The case was argued at the July Term 1874 of this court.

*C. C. Nichols,* for plaintiff:

The only questions raised by defendants' return to the alter-
native writ are questions of law, and are substantially these:
Was there a sheriff for Harvey county for the regular term
to commence in January, 1874, to be elected at the general
election held in November, 1873? or, in other words, was C.
A. Tracy, the then present incumbent of that office, and who
was elected in November, 1872, chosen sheriff of said county
for a *regular* term of two years, or for an *unexpired* term of
one year?    If C. A. Tracy was chosen for an *unexpired* term
ending on the second Monday of January 1874, then the
election of the plaintiff Hagerty in November 1873 was legal,
and on said second Monday in January (1874) next after his
election he was entitled to the office.

If the acts of our legislature concerning the subject-matter
in issue, are not beyond the pale of the constitution, there can
be but little or no doubt in the matter.    The provisions of
our constitution relating to this question are, §19 of art. 2;
§2 of art. 4; §1 of art. 9 ; §2 of art. 9; §3 of art. 9; §1 of
art. 15; §2 of art. 15.    Now, taking all these sections of the
constitution of our state, and considering them separately, or
as a whole, and I arrive at one conclusion, namely, that the
constitution of our state, so far as it relates to county offices
and officers, has but one restrictive provision in it, and that
it has clothed our legislature with authority concerning
county offices and county officers.    On this question it is
totally silent, except where it declares the term of county
officers, and where it delegates *all other powers* concern-
ing them to the legislature, to be disposed of and provided
for as the legislature in its wisdom may direct.    The consti-
tution does not create a single county office, unless by impli-

24—13 KAS.

cation it creates the office of county sheriff and the office of county treasurer; but it vests in the legislature the power to create such county offices as may be necessary, not even declaring whether the incumbents of such county offices as the legislature may create, shall be filled by election or appointment, but leaves the matter with the legislature, and as it may provide. The constitution does not by inference or otherwise declare that the term of county officers shall *all* be regular terms of two years; nor does it preclude the idea that they may not be, nor the idea of an unexpired term. It does not fix the date when regular terms shall begin, nor does it preclude the legislature from so doing, nor from making that date uniform in every county throughout the state. And in view of these facts the legislature has enacted such laws as to it seemed wise in the premises. They have said that all county officers should be elected for full terms once in two years; that the regular term shall commence on the second Monday in January after their election; that sheriffs shall be elected for a full term in the odd years, and that whenever a sheriff shall be .elected at any other time it shall be for the unexpired term only; and this rule, (the terms, and .commencement thereof being fixed by other provisions,) applies to the first officers elected in newly-organized counties, as well as to those subsequently elected. If § 3 of art. 9 of the constitution must be construed in its broadest sense, meaning all county officers, and as precluding the idea of anything but a regular term of two years, and as precluding the idea of an unexpired term, and as precluding the idea that one portion of our county officers may be elected in the odd years, and the other portion in the even years, and as precluding the legislature from fixing a uniform date for the commencement for the terms of county officers, in each and all the counties throughout the state, then, why is not a sheriff or any other officer elected at the *first election* in a new county, (not the first general election,) a county officer in the full meaning of the term, and as much a county officer as a sheriff elected at the first *gen-*

*eral* election, and entitled to a term of two years? And why is not an *appointee* to the office of sheriff, or to any other county office, a county officer in every sense of the word, and entitled also to a term of two years? And if a county officer elected at a *first* general election can hold his office for a term of two years, why cannot a sheriff elected at the *first* election in a new county, or a sheriff elected as a successor of an appointee, at the next general election, also hold his office for a term of two years? It must be borne in mind that § 3 of art. 9 of our constitution simply says, "*All* county officers shall hold their offices for the term of two years, and until their successors are qualified," and that it does not say that all county officers *elected* shall hold their offices for a term of two years; nor that all county officers elected at the first general election shall hold their offices for a term of two years; nor does it say that all county officers elected at general elections shall hold their offices for a term of two years; nor does it say whether county officers shall be elected or appointed; nor does it by implication or otherwise undertake to distinguish between county officers elected or appointed, or between county officers elected at the *first* elections, and county officers elected at the *first general* elections. This court has already decided that an appointee to office can hold only until the next general election after his appointment, and that an appointment does not start a regular term to running. (8 Kas., 340, 341.) And this court has heretofore virtually decided that §§ 57, 58 and 59, ch. 36, Gen. Stat., are not unconstitutional: and in said § 59 it is provided that "county officers when elected to fill a vacancy may hold the same during the unexpired term for which they were elected, and until their successors are elected and qualified." But if the legislature had not fixed a uniform time when the regular term of county officers in the several counties in the state should begin to run, still under the constitution the *first* election held in the several counties in the state, after their several organizations, would fix the date or time when the regular term of office commenced to run, and that date in all

probability would be different in every county in the state, just as their organizations differed in point of time. But even then, after this date had been fixed in the several counties, by the date of their first election, would not vacancies occur? and could not incumbents be elected, as now, for the unexpired term, thus preserving their starting point as first established by their first election? But our legislature has seen fit to dispose of this matter by laws enacted for that express purpose, whereby county officers are divided into two classes, which may be denominated the odd-year and even-year classes. The odd-year class (to which the office of sheriff belongs except when some of its members are elected in an even year to fill an unexpired term,) is elected in November of every odd year, and the several members of this class, except county treasurer, enter upon the discharge of the duties of their several offices on the second Monday in January next after the election; and any member of this class of officers being elected in the even year to fill an unexpired term, except county treasurer, enters upon the discharge of the duties of his office on the second Monday of January next after his election. And so far as this disposition by the legislature of county offices, of regular and unexpired terms, with a uniform date of beginning throughout the state, and the election and appointment of officers tends to prevent confusion, and to insure certainty and convenience, and to promote order in general elections for county officers, there are probably none who will doubt its wisdom, and probably but few who will sincerely question its constitutionality, or who will contend that the legislature has not acted in the premises within the pale of its constitutional powers.

*C. S. Bowman*, and *R. M. Ruggles*, for defendants:

1. As to the motion to quash that part of the writ which seeks to compel the defendants to canvass the votes cast at the general election in 1873 for any other officers than that of sheriff: The plaintiff is not the real party in interest in having the defendants canvass the votes cast at said election for

any other county officer than that of sheriff, and therefore the motion to quash that much of the writ is proper. (10 Kas., 16; 6 Kas., 524.)  As to any other office than that of sheriff, the plaintiff shows himself to have no other or greater interest in the matter than that of any other person, and only such an interest as the public at large have, and therefore he cannot maintain the action to that extent. (10 Kas., 9.)

2. As to defendant's return as to the office of sheriff, and that plaintiff is not entitled to a peremptory mandamus to compel the canvass of the votes cast at said general election in 1873, the admitted facts are: That the county of Harvey was first organized on the 10th of April 1872; that a special election was held on the 20th of May 1872, for the election of county and township officers, and that at such election such officers were duly elected, who qualified and entered upon the discharge of their duties; that on the 5th of November 1872, a general election was held in said county, and that at said general election one C. A. Tracy was duly elected sheriff of the said county of Harvey; that the said Tracy duly qualified, and on the 13th of January 1873, entered upon the discharge of the duties of his said office; that since said time he has neither resigned, died nor been removed from said office, but that on the contrary, he has ever since said time been and now is discharging the duties of said office of sheriff.  The facts being admitted as proved, the first and only question to be solved is, For what period of time was Tracy elected to hold said office of sheriff at said general election in 1872?  If this question is answered by the court, as we think it must be, that he was elected for the period of two years, then of course the matter is ended, and the peremptory writ will be refused, for the very obvious reasons that if there was by the laws of this state, and the circumstances of the case, no person to be elected to fill the office of sheriff of Harvey county at the general election held on the 4th of November 1873, it follows of course that any votes cast at such election for any person to fill such office were mere nullities, and the canvass of such votes would be of no

benefit to the plaintiff or any one else; and this being the case, the writ under the rulings of this court must be refused. (5 Kas., 638; 10 Kas., 162.) If, however, upon the other hand, the court should hold that Tracy was elected to hold his office only until the general election of 1873, it will of course be admitted that a peremptory writ must be issued.

In order to reach a determination of the question as to what period of time Tracy was elected at the general election in 1872, to serve as sheriff of Harvey county, it will be necessary to examine the constitutional provisions in reference to such elections. Sec. 3 of art. 9 of the constitution is as follows: "All county officers shall hold their offices for the term of two years and until their successors shall be qualified." Sec. 2 of art. 4 provides that two elections shall be held each year; one to be a general election and the other to be a township election. It of course follows from this constitutional provision in relation to elections, that all county officers, and all other officers to be elected other than township officers, are to be elected at the general election whenever they are elected to fill the constitutional term of office. In other words, (in the absence of express statutes to the contrary at least,) every constitutional term of a county office must commence with a general election. And if this were not so by reason of the constitution itself, it would be so by reason of the provisions of ch. 36 of the general statutes. By the same constitutional provision in relation to elections, we find that the general elections are to be held in November of each year. It appearing from the facts in this case, that the first general election which ever could have or ever in fact was held in the county of Harvey, was held on the 5th of November, 1872, it seems to us to inevitably follow as a conclusion that the constitutional term of the office of sheriff in that county could only have commenced from that first general election. In other words, the constitutional term of office for sheriff of Harvey county had never commenced to, or had run in Harvey county prior to, or before the first general election held in that county. If the propo-

sitions above made be correct, then it seems to us that all that remains of this question to be discussed is, whether the constitutional provision above quoted in reference to the terms of county officers is self-asserting, or whether it lays in abeyance until called into life by an act of the legislature. If the constitutional provision fixing the term of county officers is self-asserting, it of course follows that it immediately asserted itself at this first general election, and attached itself to the office of sheriff of Harvey county, and that therefore Tracy was elected to fill that office for the term of two years. But if this constitutioual provision is not self-asserting, and lays in abeyance until called into life by an act of the legislature, it follows that the legislature has a right of control over it, and to say when it shall run and when it shall not run, and having by § 2, page 428 of the General Statutes said when the constitutional term of the office of sheriff in every county in this state shall commence to run, it can only commence to run from such time; and therefore we admit, that if the legislature has control over this constitutional provision, and can say when it shall run and when it shall not, that by this section of the statute above quoted, the constitutional term of office of sheriff of Harvey county did not and could not commence to run until the general election held in that county on the 4th of November, 1873, and that Tracy was only elected to fill an *interregnum* that necessarily existed in the office of sheriff of that county from the general election of 1872 to the general election of 1873. In other words, under this construction it must be held that the constitutional term of the office of sheriff in that county lay in abeyance until the general election of 1873, for as we have seen it can only commence to run from some general election, and that prior to the general election of 1873 there had never been a general election held in that county, which would give to it a starting point by reason of this statute. To go back to our starting point, we think beyond a doubt, that the plaintiff in this action, in order to maintain it at all, is forced to squarely take the position that this constitutional

provision is not self-asserting, but is subordinate to the will of the legislature and can only come into life and force upon an expression of such will, and that therefore by the terms of said § 2, page 428, Gen. Stat., it necessarily lay in abeyance until the general election of 1873. The defendants take the position that it is self-asserting and will always attach itself to any term of office, at any general election, where it ought to attach itself if it be self-asserting, irrespective of any and all acts of the legislature concerning it; that the legislature has no power or control over it; that it never lays in abeyance, and that therefore it will always, in every newly-organized county, inevitably assert itself at the first general election held in such counties, the legislature to the contrary notwithstanding. Which of these two positions is the correct one? We think that this question has been fully, forcibly and squarely answered by this court, in the case of *The State, ex rel. Goodin, v. Thoman,* decided by this court at the July Term in 1872, (10 Kas., 191.) The facts in that case, the court will remember, were these: The legislature in 1867 created the 6th, 7th, 8th and 9th judicial districts, and provided that at the next general election judges should be elected in each of these districts to hold their offices for the term of four years, and until their successors in office were elected; John R. Goodin was elected under this law at the general election in 1867, as judge of the seventh judicial district; at the general election in the fall of 1871, he was again elected judge of that district. The question before the court was, was Judge Goodin elected at the general election in 1871 for the constitutional term of four years, or was he elected merely to fill an *interregnum* existing between the time when his office expired under the election of 1867 and the general election of 1872? Sec. 3, page 428 of Gen. Stat., had attempted to fix the time when the constitutional term for the offices of district judges should run, in just the same way as § 2 of the same page attempts to fix the time when the constitutional terms of county officers shall run, and by that section the time fixed for the

election of district judges for the constitutional term was at the general election in 1868, and every four years thereafter. While it was admitted by the defendant in that action that the legislature had a right by special statute to provide for the election of a judge in 1867 in the seventh judicial district, and that such judge should hold his office for the constitutional term of four years, yet the defendant contended, (and of course rightly,) that upon the expiration of this four years, for which Judge Goodin was elected in 1867 under this special law, that the special law had spent its whole force, and that after that term provided for by it had expired, it had nothing further to do with the election of judges in that district. Then it was further contended for by the defendant that § 5 of article 3 of the constitution, fixing the period of the terms of district judges, just the same as § 3 of article 9 fixes the period of the terms of county officers, was not self-asserting, and only came into existence when called into life by an act of the legislature, and that § 3, page 428 of the Gen. Stat., had fixed the precise times and the only times when the constitutional terms could attach to the office of district judge in this state, except only when otherwise changed by special laws, and therefore it was further claimed as the very logic of the position that this provision was not self-asserting; that as the legislature had by the special law only given this constitutional promise life during the four years immediately succeeding the general election of 1867, its life expired with the expiration of that four years, and thereafter depended entirely upon § 3, page 428 of the Gen. Stat., (in the absence of any other act of the legislature upon the subject,) in reference to its asserting and attaching itself to the office of district judge in that district, and that by that section of the statute it could only commence running and attach itself to that office from and after the general election to be held in 1872; and that by reason thereof there was an *interregnum* in the office of district judge of the seventh judicial district from the general election in 1871 to the general election in 1872, during which the constitutional term lay in

abeyance; and that therefore any one who was elected at the general election in 1871, could only hold until his successor should be elected in 1872. On the other hand, it was contended that the constitutional provision was self-asserting, and therefore immediately attached itself to the first general election held after the term provided for by the special law had expired; and that therefore Judge Goodin's election at the general election in 1871, was for the constitutional term of four years, notwithstanding § 3, page 428, Gen. Stat. And this court, after a very able and elaborate argument of the question, decided that the constitutional provision *was* self-asserting; was a higher and paramount law to the act of the legislature; and that notwithstanding § 3, page 428, Gen. Stat., it attached itself to the office of judge of the 7th judicial district at the first general election after the term provided for by the special law expired. What is the very logic of this decision? It can be and is nothing else than that the legislature cannot control the constitutional provisions establishing the terms of any offices; that such provisions never lay dormant or in abeyance until called into life by an act of the legislature; that they spring into existence and attach themselves to their respective offices irrespective and regardless of any and all laws of the legislature upon the subject. Was or is this decision any more applicable to the construction of § 5, art. 3 of the constitution, and § 3 page 428 of Gen. Stat. than it is to the construction of § 3, art. 9 of the constitution, and § 2, page 428 of Gen. Stat.? Is not this decision conclusive upon the question, as to whether § 5, art. 3 of the constitution, or § 3, art. 9 of the constitution are self-asserting, by saying that they are? If this be so, is there any way to escape a conclusion in the case at bar in favor of the defendants?

Is there any escape from saying that by the very logic of this decision, the constitutional term for county officers in all newly-organized counties, attaches itself to the various offices at the first general election held in such county? Would this court have arrived at any other determination in the above

case if the legislature had created the 7th judicial district in 1871 and provided that the governor should appoint a person to act as judge until the general election in 1871, and remained silent as to how long the person elected judge at the general election in 1871 should serve, and a person elected at the general election in 1872 had brought the action under that state of facts?

If this court would not have decided different under such a state of facts, what must be its decision in a case when a county organized in the spring of 1872, provided with temporary officers until the general election in the fall of that year, and at that first general election county officers are elected, and the court is asked to decide that such county officers are not elected for a constitutional term, but are only elected to fill an *interregnum* that exists in such offices from the first general election in the county until the second general election in that county, by reason of the fact that the legislature has not permitted the constitution to assert itself in that county until such second general election?

But again, outside of this decision and the principles involved in it, we think that the law upon this subject is with the defendants, even conceding, for the sake of the argument, that the legislature has entire control of the provision of the constitution fixing the terms of county officers, and can say when such terms shall run and when they shall not. For although the legislature has said by § 2, page 428 of Gen. Stat. that the constitutional term of two years for the office of sheriff of any county shall run only from general elections held on the odd years in such county, yet this section is limited by exceptions made by § 5, same page, in its application, and we think that one of the exceptions provided for by this § 5 is in the case of any newly-organized county when a special election has been held by the inhabitants thereof upon its organization under § 3, page 249 of Gen. Stat., for county officers, and such county officers are elected by the people at such election, for the reason that § 8, page 251 of Gen. Stat. provides that such county officers so elected by

the people, shall only hold their offices until the first general election thereafter, and their successors shall have been elected and qualified. Now whenever the first general election in such a county comes on an *even* year, if the persons elected at such general election are not elected for the constitutional term of two years, it follows that the people of such county are called upon to hold *two elections* to fill one vacancy or *interregnum.* This of course would be no argument if the first county officers were appointed to hold until a general election, but as they are elected by the people, *one* such election would be sufficient to fill the *one vacancy.* Surely, the legislature never intended to require two elections to fill but one vacancy. Therefore we say that by § 8, page 251 of Gen. Stat., the legislature intended in all cases of newly-organized counties that at the first general election held in such counties, their full complement of county officers should be elected for the full constitutional term. To give it any other construction would be to say that the legislature intended that in all newly-organized counties that happened to be organized in the even-numbered years, there would be a vacancy in the offices of county clerk and county commissioners that would have to be filled, 1st, by an appointment by the governor; 2d, by a special election by the people; 3d, by a general election held by the people. Evidently the legislature had no such intention in enacting the various statutes in relation to the election of county officers.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 10th of April 1872 the governor, having received the requisite papers preparatory to the organization of the county of Harvey, appointed commissioners and county clerk for that purpose, as the statute requires. On the 20th of May thereafter a special election was held, at which a full set of county officers was elected, and immediately thereafter qualified. At the general election in November 1872 all the county officers were elected, among which C. A. Tracy was elected sheriff. At the general elec-

tion in November 1873 the plaintiff was elected sheriff. But the defendants, the county commissioners and county clerk of said county, refused to canvass the votes therefor. The real question raised on these facts, and the only one necessary to decide is this, Was Tracy elected for a full term of two years? If he was, it would be an idle thing to direct the canvass of the votes for the plaintiff. If he was not, then certainly the plaintiff is entitled to the office and to have the votes canvassed and the result declared, so that he may enter upon the discharge of his duties.

The statutory provisions bearing upon this question are these: Chapter 24 of the General Statutes (page 249,) provides for the organization of new counties, and after directing how the county officers shall be elected at a special election fixes their term of office, in § 8, (page 251,) directing that they shall hold their respective offices until the next general election and until their successors shall be elected and qualified. Sec. 2, page 428, Gen. Stat., provides for the election of sheriff and certain other county officers at the general election in 1869 and at the general election in every second year thereafter. Sec. 57 of ch. 36 provides for filling vacancies in county offices as well as others by appointment until the next general election; section 58 fixes the time when the regular term of office begins, on the second Monday of January next after the election; section 59 regulates the term of officers appointed or elected to fill vacancies, and therein declares that they shall hold during the unexpired term for which they are elected and until their successors are elected and qualified. These are the material statutory provisions on the question, and from them we think it clear that it was the purpose of the legislature to fix a uniform time for the commencement of the regular term of officers, one class to be elected in the odd years and one class in the even years, and the term of each class to commence on the second Monday in January after their election, and wherever vacancies occurred then the person elected to fill the same was only elected for the unexpired term, so that all officers of any

1. Officers of new counties; term of office.

one class should, throughout the state, be elected at the same time, thus avoiding confusion and the necessity for a great multiplicity of laws. If the statutory provisions upon the subject were alone to be consulted, we should have no doubt that Tracy's election as sheriff in November 1872 was only for an unexpired term, and that his successor would be elected at the general election in 1873. We think this is the fair construction of the statutory provisions on the subject; and had the question rested on these provisions it is not likely that any litigation would have ever grown out of them. The constitutional provision on this subject, and not the statutes, has given rise to the difficulties in this case. Sec. 3 of art. 9 prescribes the term of county officers in these words: "All county officers shall hold their office for the term of two years, and until their successors shall be qualified." It is contended that this section attaches to every county officer immediately upon the election or appointment of such officer. Taken in its hardest literal terms, and the clause seems to bear this construction, and would apply alike to all county officers, upon their accession to office, whether elected to fill a vacancy or for a full term, for it applies to *all* county officers, making no distinction between those appointed or elected to fill a vacancy, and those to fill a full term. Such a construction would be productive of great confusion, as in the course of time, from removals, resignations, death, and other causes, it would come to pass that the commencement of the term of office would be different as to each office in a county, and in each county in the state. From other constitutional provisions it is apparent that but two elections are contemplated in a year, a township election, and a general election, so that to add to the confusion, it would happen that a great number of county officers would hold by appointment while others might be elected. It is the general policy of the constitution that the people elect the officers, and this policy is the one adopted by the legislature. But as to county officers, the constitution is silent. It prescribes the length of their term, but as to how they shall be selected, or when the term

2. County officers; constitutional term.

shall begin, there is no provision. The conduct of public business, under circumstances such as above suggested, would be so difficult as to be nearly impracticable. We cannot think the framers of the constitution intended any such result. Nor do we think it necessary to give such a construction to the clause. It was undoubtedly intended to fix the regular term of county officers at a uniform period of two years. The constitution furnishes general rules for the government of the state; it rarely comes down to details; and in this provision we understand the purpose to be to furnish a general rule fixing the duration of a regular term, and not provisions for a vacancy, or an exceptional case. We cannot give it the literal interpretation claimed by the defendants, without making it absurd from its impracticable workings. We must therefore give it a construction that is neither violent nor unreasonable. The provisions of the constitution as to some of the officers are explicit — that they are to be elected; that in case **3. Power of legislature in regard to new counties.** of vacancy it shall be filled by appointment; and the appointment runs only until the next general election that shall occur more than thirty days after such vacancy shall have happened; (§ 14, art. 1; § 11, art. 3;) while as to county officers the entire discretion is vested in the legislature as to how many there shall be, (with some possible exceptions,) how they shall be selected, when their terms shall begin, and what shall be their duties. The sole restriction is as to length of term. By giving this restrictive clause the fair construction of applying to the regular term of county offices, and not to vacancies or exceptional cases, we conform to the almost uniform practice of the counties of the state, to the construction placed upon it by the legislature in the statutes above referred to, and to the construction this court has heretofore given it in the case of *Bond v. White,* 8 Kas., 333. Does this case form one of the exceptional ones? We think so. The legislature is given the power to provide for the organization of new counties: this includes the right to prescribe the terms and conditions prerequisite thereto, and all the steps necessary to secure that result. Such

regulations are prescribed, and among others it is provided that their organization may be effected at any time when the prescribed conditions exist; that the first commissioners and clerk are to be appointed by the governor; at the first election the county officers are only to hold until the next general election, when another election is to be held. If sec. 3 of art. 9 is to have any other construction than the one we have given it, then it applies with full force to the officers elected at the first election, and they must hold for a full term, and then each new county might and probably would have its political year beginning at a different period from that of any other county. It is not contended that the constitutional provisions applies to these, nor is it consistent with the position of defendants that they should so hold, for then the first officers, and not themselves, would be entitled to hold the offices. This is not said by way of estoppel on the defendants, but as a suggestion of the consequences of giving to the section the construction claimed, and applying it to the organization of new counties. We think that under the power to organize new counties the legislature had the power to designate how the offices shall be filled until the commencement of the regular term, and that the fact of its having provided for two elections, does not derogate from their power. And we think that there is no doubt that the legislature may determine when a regular term shall commence, and that they have so determined in the election law; that certain of the county officers are elected in the odd years and their terms commence in January of the even years, and that certain other county officers are elected in the even years, and their terms commence in January of the odd years. The term of all these offices is two years. The legislature cannot make them more nor less; but for vacancies, and for exceptional cases, such as the organization of new counties, we think they have the power to say how the office shall be filled up to the time when the regular term commences, even if it requires two elections in one year. With these views it follows that a peremptory writ must be awarded against the defendants, com-

manding them to canvass the votes for plaintiff for sheriff of Harvey county.

While it is the duty of defendants to canvass the votes for the other officers mentioned in the alternative writ, we cannot command them so to do on the application of plaintiff. The application must be in the name of the proper public officer, or of the real party in interest, to authorize the court to act in the premises.

Mandamus; plaintiff.

As the defendant A. G. Richardson, one of the board of commissioners, by his answer has shown his willingness to canvass the vote at the time prescribed by law, and his attendance at the proper place and time for that purpose, and was only prevented by the refusal of the other commissioners, and has also shown by his attendance at the time and place commanded in the alternative writ for the canvass of the vote, and by his request to the other commissioners to canvass the vote then and there, the peremptory writ will go at the costs of the other defendants.

Awarding costs, in certain cases.

All the Justices concurring.