M. B. LIGHT, *County Clerk*, v. THE STATE, *ex rel., &c.*

1. COUNTY-SEAT ELECTIONS; *Notice of Second Election.* Where two elections are necessary to determine the question of a county-seat, the failure, of the sheriff to give notice of the second election does not vitiate said election.

2. ———— *Mistake in Canvass; Failure to Contest in Due Time; Second Election; Laches; Estoppel.* At an election for the relocation of a county-seat A., B., and C., were candidates. At the first election neither place received a majority of the votes. The commissioners met, canvassed the vote, rejecting part of the returns, and declared that A. and B. had received the highest votes, and were the candidates at the second election. If a full canvass of all the returns had been made, A. and C. would have been found to have received the highest votes, and would have been declared the subsequent candidates. Notwithstanding the error the second election was had, A. and B. being the places voted for. A. received the highest vote, and was declared the county-seat. Subsequently the friends of C. obtained an alternative writ of mandamus, commanding the commissioners to meet and make a correct canvass of the first vote, or show cause why they had not so done. In obedience to this alternative writ, and without attempting to show cause, the commissioners met, canvassed the entire vote, declared A. and C. to have received the highest votes, and ordered an election to decide between them. Such election was held, and C. received the majority, and was declared the county-seat: *Held,* that inasmuch as no proceedings to contest the validity of the first canvass were had until after the second election, that that election was final, that the subsequent recanvass of the first vote, and the following election, were unauthorized and void, and that A. was the legal county-seat.

*Error from Howard District Court.*

MANDAMUS, brought in the name of *The State* as plaintiff, by *Samuel Donelson,* county attorney, as relator, to compel *M. B. Light,* as county clerk, to remove his office and the books, records, and papers thereto belonging from the town of Boston, to the town of Elk Falls, and there hold and keep the same. The action was to determine whether Boston or Elk Falls was the county-seat of Howard county. The action was tried at the May Term 1874. The court determined that Elk Falls was the county-seat, and gave judgment

32—14 KAS.

in favor of *The State*. A peremptory writ of mandamus was awarded, requiring *Light* to remove his office to Elk Falls. *Light* appeals, and brings the case here on error for review. No briefs on file.

*Charles J. Peckham, York & Humphrey*, and *J. D. McCue*, for plaintiff in error.

*Samuel Donelson*, county-attorney, and *R. H. Nichols*, for the relator, defendant in error.

The opinion of the court was delivered by

BREWER, J.: The material facts in this case are these: On the 12th of August 1873, the town of Peru was the county-seat of Howard county. An election was on that day held for the relocation of the county-seat. Boston, Elk Falls, and Peru were candidates. No place received a majority. By the canvass of the commissioners Elk Falls and Peru

Statement of case.    were declared to have received the highest number of votes, and to be the two candidates to be voted for at the second election. This election was ordered to be held and was held on the 26th of August. No notice was given by the sheriff of this election. On the day for the canvass of the votes cast at this election the commissioners were summoned to appear before the district judge, and were unable consequently to attend and make the canvass. But afterward and on the 26th of September 1873, they met, canvassed the votes, and declared Elk Falls to have received the majority, and to be the county-seat. At the canvass of the votes cast at the first election the commissioners rejected some of the returns, and thereby changed the result, for if all the votes had been canvassed, Boston and Elk Falls would have received the highest number of votes and been the competitors at the second election. Subsequently one of the Justices of this court issued an alternative writ of mandamus, commanding said commissioners to canvass the entire vote cast at said first election, or show cause, on the first Tuesday of January 1874, why they did not. On the receipt of this

alternative writ the commissioners met on the 29th of October 1873, canvassed the entire vote, declared Boston and Elk Falls to have received the highest vote, and to be the competitors at a new election ordered to be held on the 11th of November. On the 11th of November, in obedience to this call, an election was held, and Boston received the majority, and was declared by the commissioners the county-seat. All the county officers but the county clerk, the plaintiff in error, hold their offices at Elk Falls. He moved his to Boston after the last canvass, and this action was to compel him to move it back to Elk Falls.

Upon these facts counsel for plaintiff in error claim, "1st, That a partial canvass of the votes cast at the first election is not a compliance with the law; 2d, that a canvass of the entire vote is essential to the validity of the second election; and 3d, that proclamation of the result, and notice of the time of holding the second election, is necessary to make such election valid, and all these elements being wanting in this case, that Elk Falls takes nothing by the second election." In reference to the last point it may be said that it is very doubtful whether the omission of the sheriff to give notice of any election would vitiate that election, provided the people generally participated in it. And again, while § 10 of the act respecting county-seat elections (Gen. Stat., p. 298,) declares that all such elections "shall be conducted in all respects as provided for by the general election laws of the state," yet the provisions in the latter laws concerning notices seem inapplicable. The sheriff is to give, "ten days before the holding of any special election, * * * public notice by proclamation, * * * one copy of which shall be posted up at each of the places where the elections are appointed to be held, and inserted in some newspaper published in the county, if any be published therein." By the county-seat election law, § 6, the commissioners are to meet on the Saturday succeeding the first election to make the canvass; and by § 7, if a second election is necessary it is to be held on the second Tuesday thereafter. The day of the

*1. Proclamation; county-seat election.*

canvass is thus itself only the tenth day before the day of the election. The practical difficulties in the way of giving the notice indicate that the legislature did not intend to make that essential to the validity of such second election.

The other is however the more important and difficult question. Suppose that the commissioners ignorantly or willfully reject a part of the returns of the first election, and in consequence declare that A. and B. have received the highest vote, and are therefore the candidates at the second election, when in truth and upon a full canvass A. and C. received the highest vote, and are entitled to be the subsequent candidates: what remedy if any has C.? Can the commissioners thus nullify the will of the people? and if not, how can the wrong be righted? It may be that there is no direct, full, and adequate remedy — that it is one of those wrongs which can only indirectly be remedied. Perhaps in case of glaring omission or misconduct the friends of the candidate improperly left out might ignore the canvass of the commissioners, and vote for that place on the second election, and thus right the wrong. But this, if legal, would manifestly come far short of being adequate, because many would be loth to believe wrong or mistake on the part of the canvassers, and would be controlled by their proclamation of the result rather than by any evidence which in the brief time intervening could be collected and presented to the voters at large. Mandamus will lie to compel a correct canvass; but whether it will lie after the dissolution of the canvassing board, is a question perhaps doubtful under the authorities: *People v. Supervisors of Greene,* 12 Barb., 217; *Hadley v. City of Albany,* 33 N. Y., 603; S. C. in Brightly's Con. Election Cases, 307; *Bowen v. Hixon,* 45 Mo., 340; *People v. Hilliard,* 29 Ill., 413. These authorities seem clearly to show, that a canvassing board having met at the legal time and place, made the canvass, and adjourned, cannot of their own will thereafter come together and make a second canvass. Their powers are exhausted by the first action. If however the board has not met, or having met

*Marginal note: 2. Mistake in canvass; failure to contest in time.*

has refused to act, its action can be compelled: *Hagerty v. Arnold*, 13 Kas., 367.    Doubtless the correctness of the canvass, at least of the final election, can be determined in mandamus proceedings under § 2, ch. 79 of the acts of 1871, (Laws of 1871, p. 191,) and § 7, as amended in 1872; (Laws of 1872, p. 271, § 1.)    But these mandamus proceedings do not run against the canvassers, and are not directly to compel a recanvass.    But whatever may be the rule as to the power of the court by direct proceeding to compel a recanvass after the dissolution of the canvassing board, it seems to us that any proceedings to compel such recanvass as to the *first* election should be had before the *second*.    In other words, parties
Second election. Amendment of 1872, construed. cannot accept the canvass of the first election as correct, enter into the contests of the second upon the basis of such prior canvass, and then when disappointed in the result of the second election obtain a recanvass of the first, or contest the result of the second on the ground of an incorrect canvass of the first.    This, while it has manifest fairness on its side, seems also warranted by the legislation of 1872 above cited.    That amendment, after declaring that in any action or proceeding under the act the validity of the election, and of any votes cast or refused at such election, may be inquired into, adds this proviso: "*Provided, however*, that in no case shall the validity of any election be inquired into beyond the one last had, and upon which the proceeding is based."    This proviso, which was first added in that year, contemplates proceedings in which two elections are provided for as sometimes necessary to a final determination; and the only proceedings named in the act requiring two elections are county-seat elections.    It therefore obviously refers to such elections, and plainly indicates that a contest made after the second election must be limited to that election.    It is true, that the proceedings named in the act are not directly to compel a recanvass, and a proviso cannot be extended beyond the reach of that to which it is a proviso. Yet this is evidence of the legislative will in the matter, and sustains us in the conclusions otherwise reached.    It seems

to us therefore that the second meeting and canvass by the commissioners of the votes cast at the first election availed nothing, and that no proceedings having been taken to correct the first canvass prior to the second election, all parties must be held concluded by that canvass. It follows therefore that the judgment of the court below is correct, and must be affirmed.

KINGMAN, C. J., concurring.

VALENTINE, J.: I think perhaps the decision of this case is correct, but still I have no doubt of the power of any proper court to allow a writ of mandamus to be issued to compel a board of canvassers to canvass or recanvass election returns where such board has in the first instance neglected or refused to canvass the same, or to canvass some definite and ascertainable portion thereof. And this I think may be done, although a particular day is fixed by law for the canvass, and the board has met on that day and canvassed a portion of the returns and adjourned. The canvassing board are simply ministerial officers, having no judicial power, and therefore when they neglect or refuse to canvass election returns they thereby create a cause of action against themselves, to-wit, the action of mandamus, and they cannot merely by an adjournment of their board defeat or destroy that cause of action.