GRANVILLE M. LEWIS v. COMM'RS OF MARSHALL Co., *et al.*

1. ELECTION; BOARD OF CANVASSERS, *May be Compelled to Reassemble and Canvass Votes.* The court may by mandamus compel a board of canvassers, after it has made one canvass, declared the result, and adjourned, to reassemble and make a correct canvass of all the returns, if it appears that upon the first canvass it improperly rejected the returns from some of the election precincts, and refused to canvass them.

2. DUTY OF CANVASSERS—*Ministerial, not Judicial.* Where returns are regular in form, and genuine, a canvassing board may not reject and refuse to canvass them on the ground that illegal votes had been received, or other frauds and irregularities practiced at the election. Such matters are to be inquired into by a tribunal for contesting elections, or in *quo warranto* proceedings.

3. —————— *Where Returns are Tampered with.* Where returns are duly prepared and signed by the proper officers, but thereafter and before they reach the office of the county clerk, are tampered with by unauthorized and outside parties, and changed as to the votes cast for the respective candidates for one office, and only so changed: *held*, that the canvassers should receive the returns and canvass the votes cast for candidates for the other offices.

*Original Proceedings in Mandamus.*

LEWIS filed in this court his verified petition for a mandamus against the *Board of Comm'rs of Marshall Co.*, and *J. G. McIntire*, the *County Clerk* of said county. Said petition showed that *Lewis* was a legal elector of said Marshall county, and was eligible to the office of county clerk of said county; that at the general election held in said county on the 2d day of November 1875, he was a candidate for said office of county clerk, and received a majority of all the votes cast for such office, and was duly elected thereto for the regular term to commence on the second Monday of January 1876; that the defendant *McIntire* was also a candidate for said office; that there were and are twelve election precincts in said county, and no more; that the votes cast at said election for the plaintiff and for said *McIntire*, respectively, for said office, were as follows:

Statement of the Case.

| | | Lewis | | McIntire | |
|---|---|---|---|---|---|
| In Guittard precinct, | for Lewis, | 72; | for McIntire, | 119 |
| Vermillion, | " " | 125 | " " | 196 |
| Elm Creek, | " " | 29 | " " | 32 |
| Noble, | " " | 39 | " " | 31 |
| Franklin, | " " | 29 | " " | 27 |
| Rock, | " " | 12 | " " | 45 |
| Marysville, | " " | 162 | " " | 275 |
| Wells, | " " | 47 | " " | 46 |
| Blue Rapids township, | " " | 123 | " " | 84 |
| Blue Rapids city, | " " | 210 | " " | 37 |
| Center, | " " | 8 | " " | 80 |
| Waterville, | " " | 280 | " " | 91 |

Totals, .............................for Lewis, 1136; for McIntire, 1063

The petition alleged also that the poll-books and ballots were duly returned from all said precincts, to the county clerk of said county, and duly filed; that the board of county commissioners, constituting the board of county canvassers, met at the office of said county clerk on the 5th of November, for the purpose of opening and canvassing the returns made to said county clerk of the votes cast in said Marshall county for the several persons voted for for said office of county clerk, and for other offices to be filled at said election; that said county clerk met and was present with said canvassers at that time; that the returns from all the above-named election precincts were then on file, and were duly submitted to said canvassers; that said canvassers proceeded to and did open and duly canvass the votes cast for the several state, county and township officers voted for at said election at the several election precincts aforesaid, *except the returns from the precinct of Waterville,* and did thereupon, among other matters, determine that the plaintiff had received 856 votes, and that said *McIntire* had received 972 votes, for said office of county clerk, and that said *McIntire* had received the greatest number of votes for said office, and was duly elected thereto; that said determination was reduced to writing, and signed by said commissioners as canvassers, and attested by said county clerk, etc. The petition further alleged that *Lewis* was present at such canvass and determination, and asked and demanded of said canvassers that they canvass and include in their statement the votes cast at and returned from said precinct of Waterville for said office of county clerk, but said commis-

sioners fraudulently and wrongfully refused so to do, and did not nor would they count or canvass said returns, or declare the result of the election and vote in said Waterville precinct, in any manner, or for any person, or for any purpose whatever, but on the contrary wrongfully and fraudulently rejected the poll-book and tally-list from said precinct. Upon such petition an alternative writ of mandamus was issued, commanding and requiring the defendant commissioners immediately to reassemble at the proper place as a board of canvassers, and proceed to open the returns of the election held in said precinct of Waterville, and canvass said returns and add the votes cast for said *Lewis* in said precinct for said office of county clerk to the votes cast for him in each and every other precinct in said county for said office, and thereupon determine that the said plaintiff received the greatest number of votes for said office, and declare him elected to said office; and commanding and requiring the defendant *McIntire*, as county clerk, immediately after the canvass and determination so made by said commissioners, in pursuance of such determination, to make out and deliver to said plaintiff a certificate of his election to said office — or that said defendants respectively show cause, etc. Said writ was allowed and issued November 15th, and was returnable on the 8th of December 1875.

One of the commissioners, *Joseph C. Dickey*, chairman of the county board, answered, that he was, on said 5th of November, and has since been and still is, ready and willing to count and canvass the vote and returns from said Waterville precinct, but was and is prevented from so doing by reason of the action of the other two commissioners of said county. The other two commissioners, *Joseph Whitley* and *D. Q. Millett*, and the defendant *McIntire*, as county clerk, showed cause. They filed a joint answer, verified by *McIntire*, in which they allege that said *J. G. McIntire* was eligible to said office of county clerk at said election; that he was a candidate for said office, and was voted for by electors of said county, and that "the said *McIntire*, as appears from the returns of

the judges of the election, duly certified and returned into the office of the county clerk of said county, and canvassed by the board of county commissioners, received a majority of all the votes cast at said election;" that said commissioners met at the proper time and place, "and then proceeded to open the several election returns which had been made to the office of said county clerk," and "did then and there declare and determine that the plaintiff had received 846 votes, and said *McIntire* had received 972 votes for said office," and thereupon determined that said *McIntire* was duly elected, etc. Said answer admitted that the "pretended election returns from said Waterville precinct were presented to the said clerk and commissioners; but defendants deny that they fraudulently and wrongfully refused to count or canvass said returns," etc. The answer then alleges that one H. S., and divers other persons to defendants unknown, entered into an unlawful and corrupt agreement and conspiracy to defeat the election of said *J. G. McIntire*, and to procure the election of said plaintiff; and that in pursuance of said agreement and conspiracy, that said H. S., J. W. S., C. B., E. C. W., and J. A. E., or some of them, with other persons to defendants unknown, on the morning of the election, and before the polls were opened in said Waterville precinct, met at the voting-place in said precinct, and placed in the ballot-box, "fraudulently and unlawfully, a large number of ballots," and that during the day "the persons above stated kept and had in their possession and control the said ballot-box, poll-books, and tally-sheets," etc.; that the "judges and clerks, or some of them, unlawfully and fraudulently received and deposited into said ballot-box over 100 fraudulent ballots." The answer also alleges that "a large number of the persons who voted at said Waterville precinct were voters in other counties of the state of Kansas than that of Marshall county." It also alleges that the "poll-books, tally-lists and ballots" sealed up by the judges of said Waterville precinct "to be delivered to the county clerk were never delivered to said county clerk at any time, but that other fraudulent and

8—16 KAS.

spurious poll-books, tally-lists, and ballots were returned to said county clerk by said persons, or some of them, and these are the returns which were submitted to the commissioners for canvass, and which plaintiff demanded that said commissioners should count in determining the result of said election."

No testimony was offered at the hearing in support of the defendant's answer. But the original poll-books of said Waterville precinct were produced, and given in evidence; and it appears from them, and from testimony given at the trial, that after the poll-books had been duly and properly signed, attested and sealed up by the judges of the election, and before they were delivered to the county clerk, some person had wrongfully and willfully opened them and changed the vote as cast and certified by the judges for one candidate for *county commissioner*, which alteration would have changed the result as to such candidate and office. No other change or alteration was made or shown. The commissioners, being advised of such alteration, rejected said poll-books entire, refusing to count any votes cast in Waterville precinct for any person for any office.

*Martin & Case*, for plaintiff.

*Mann*, and *Guthrie & Brown*, for defendants.

The opinion of the court was delivered by

BREWER, J.: This is an action of mandamus, to compel a correct canvass of the votes cast in the county of Marshall for the office of county clerk. Upon the canvass that was made the canvassers rejected the returns from Waterville township, and declared one J. G. McIntire elected. If those returns had been counted, the plaintiff would have received a majority, and been declared elected. Three questions are presented: First, will the court, after a canvassing board has made one canvass, declared the result, and adjourned, compel it, by mandamus, to reassemble and make a correct canvass on the ground that at the prior canvass it had improperly omitted to canvass all the returns? Second, if the

returns are regular in form, and genuine, may the canvassing board reject and refuse to canvass them, on the ground that during the election fraudulent votes were received, and other irregularities practiced by the judges and clerks of election? And third, will the fact that, after the poll-books and tally-sheets have been properly prepared and signed, and before their delivery to the township trustee and county clerk, they are tampered with and changed by outside parties, so far as respects the votes for candidates for a single office, justify the canvassing board in rejecting the entire returns, and in refusing to count the votes cast for the candidates for the other offices?

The first question must be answered in the affirmative, and the other two in the negative. We are aware that the authorities are not uniform upon the first question. See on the one hand, *People v. Suprs. Green County,* 12 Barb. 217; and, as partially indorsing this view, *The State v. Berry,* 14 Ohio St. 315; and on the other side, *The State v. County Judge Marshall Co.,* 7 Iowa, 186; *The State v. Bailey, County Judge,* 7 Iowa, 390. The view taken by the Iowa court seems to us the correct one. It is the duty of the canvassers to canvass all the returns, and they as truly fail to discharge this duty by canvassing only a part, and refusing to canvass the others, as by refusing to canvass any. And it is settled by abundant authority, that where the board refuses to canvass any of the votes it may be compelled so to do by mandamus, and this though the board has adjourned *sine die. Hagerty v. Arnold,* 13 Kas. 367, is a case in point. The canvass is a ministerial act, and part performance is no more a discharge of the duty enjoined than no performance. And a candidate has as much right to insist upon a canvass of all the returns, as he has of any part, and may be prejudiced as much by a partial as by a total failure. The adjournment of the board does not deprive the court of the power to compel it to act, any more than the adjournment of a term of the district court would prevent this court from compelling by mandamus the signing

of a bill of exceptions by the judge of that court, which had been tendered to him before the adjournment. As a general rule, when a duty is at the proper time asked to be done, and improperly refused to be done, the right to compel it to be done is fixed, and is not destroyed by the lapse of the time within which in the first place the duty ought to have been done.

As to the other two questions, it is a common error for a canvassing board to overestimate its powers. Whenever it is suggested that illegal votes have been received, or that there were other fraudulent conduct and practices at the election, it is apt to imagine that it is its duty to inquire into these alleged frauds, and decide upon the legality of the votes. But this is a mistake. Its duty is almost wholly ministerial. It is to take the returns as made to them from the different voting precincts, add them up, and declare the result. Questions of illegal voting, and fraudulent practices, are to be passed upon by another tribunal. The canvassers are to be satisfied of the genuineness of the returns, that is, that the papers presented to them are not forged and spurious; that they are returns, and are signed by the proper officers; but when so satisfied, they may not reject any returns because of informalities in them, or because of illegal and fraudulent practices in the election. The simple purpose and duty of the canvassing board is to ascertain and declare the apparent result of the voting. All other questions are to be tried before the court for contesting elections, or in *quo warranto* proceedings. It must be borne in mind that the change in the returns in this case was made after their execution by the proper officers, and before they reached the county clerk's office, was made by unauthorized and outside parties, and not by the election officers, and did not affect the number of votes cast and returned for this plaintiff, or his opponent. Under those circumstances we think the commissioners were not justified in refusing to canvass the returns from Waterville township, so far at least as respects the officers other than the

one concerning which the tampering with and changing of the votes was had.

The peremptory writ must be awarded as prayed for.

All the Justices concurring.