# JANUARY TERM, 1893.

### PRESENT:

HON. ALBERT H. HORTON, CHIEF JUSTICE.
HON. DANIEL M. VALENTINE,*⎱ ASSOCIATE JUSTICES.
HON. WILLIAM A. JOHNSTON, ⎰

JOSEPH ROSENTHAL V. THE STATE BOARD OF CANVASS-
ERS OF THE STATE OF KANSAS *et al.*

1. MANDAMUS — *Canvassing Board.* The courts have jurisdiction in *mandamus* to control a canvassing board, whether it be township, city, county, or state, if it neglects or refuses to perform any act which the law especially enjoins upon it as a duty.

2. WRIT — *Contents.* The writ of *mandamus*, whether alternative or peremptory, must not only show the obligation of the defendant to perform the act, but must also show his omission to perform it. (*The State v. Carney*, 3 Kas. 88.)

3. ———— *Will not Lie, When. Mandamus* will not lie to compel an officer or a board of canvassers to do an act which, without its command, it would not have been lawful for the officer or board to do. (*The State v. Comm'rs of Kearny Co.*, 42 Kas. 739.)

4. BOARD — *Powerless after Adjournment.* Where the county clerk of a county signs, authenticates, and transmits to the secretary of state, within the time prescribed by the statute, an abstract of the votes of a representative district of his county cast for a member of the house of representatives, although such abstract states incorrectly the votes cast for the candidates for such office, yet if the board of state canvassers, without any notice or knowledge of the error or mistake in such abstract, proceeds, in good faith, according to the statute, to examine and declare the whole number of votes given in the representative district at the election, and from the face of such abstract determines that the person therein stated to have the greatest number of votes is duly elected as representative, and no other abstract is presented, or called to the attention of the board, from

---

*Succeeded by Hon. Stephen H. Allen, January 11, 1893.

9 — 50 KAS.

that county or district during its session, such board discharges its whole duty in the premises; and after it has finally adjourned, its power is at an end, and it cannot reassemble or make a recount. When its duty is once fully performed, it is performed once and forever, and cannot be repeated.

5. ———— *When Officially Dead — Reassembly.* After the board of state canvassers has canvassed all the returns from all the counties of the state and declared the result, and ordered certificates as prescribed by the statute, and then, having completed its labors, adjourns without day, it is *functus officio* — officially dead — and the courts have no power to compel the board to reassemble or recount any returns.

### *Original Proceeding in Mandamus.*

ACTION by *Joseph Rosenthal* against the *State Board of Canvassers of the State of Kansas* and others, to compel defendants to determine that he has received the highest number of votes cast in the 121st representative district for member of the house of representatives, and to issue a certificate therefor. Writ refused. All of the material facts appear in the opinion, filed January 7, 1893.

*W. C. Webb, G. C. Clemens,* and *Frank Doster,* for plaintiff.

*T. F. Garver, S. R. Peters, Chester I. Long,* and *F. B. Dawes,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This was an action of *mandamus* to compel the board of state canvassers to convene and determine that Joseph Rosenthal has received the greatest number of votes cast in the 121st representative district for member of the house of representatives, and, after having declared him duly elected to that office, to issue to him a certificate. The facts in the case are as follows: Joseph Rosenthal, at the general election held on the 8th of November, 1892, being eligible thereto, was a candidate for the office of member of the house of representatives for the 121st district, being Haskell county, for the term commencing on the second Tuesday

of January, 1893.   A. W. Stubbs was also a candidate for
the position at that election.   Upon the face of the returns
filed with W. H. Hussey, county clerk of Haskell county,
after the election, as prescribed by the statute, Joseph Rosen-
thal received 156 votes, and A. W. Stubbs 123 only.   Subse-
quently the board of county canvassers of Haskell county duly
canvassed the returns in accordance with the face thereof, and
such determination was reduced to writing, signed by the com-
missioners, and attested by the clerk, showing that Joseph
Rosenthal had received the highest number of votes for the
office of representative.   Afterward, the county clerk made
out and forwarded to the secretary of state an abstract of the
votes for representative of Haskell county; but by accident
or design, probably by gross negligence, he transposed in the
abstract of votes the figures, so as to show that A. W. Stubbs
received 156 votes, and Joseph Rosenthal 123 only.   This
abstract, certified to by Hussey as county clerk on the 12th
day of November, 1892, was sealed up by him in an envel-
ope, indorsed and addressed as required by law, and then
transmitted to the secretary of state, who received and filed it
in his office on the 16th day of November, 1892.

The state board of canvassers met for the purpose of can-
vassing the result of the election of November 8, 1892, as pre-
scribed by the statute, on the 28th of November, 1892, and
continued in sesssion from day to day until December 1, 1892,
when, having completed the canvass of all the returns on file
with the secretary of state of the November election of 1892,
it adjourned without day.   The certified abstract of the votes
given in Haskell county for representative was examined by
the board, and thereon a statement was made by it, showing
that A. W. Stubbs had received the greatest number of votes
for representative, and was duly elected to that office.   A cer-
tificate of such determination was ordered by the board, and
was subsequently signed and issued.   On the 19th day of
December, 1892, about three weeks after the board of state
canvassers had discharged its duties and adjourned without
day, an envelope addressed to him was received by the sec-

retary of state, without any indorsement to indicate that the same was an official communication, which contained what purported to be a correct abstract of the votes of Haskell county for representative, showing that Joseph Rosenthal received 156 votes, and A. W. Stubbs 123 only; and attached to the new or corrected returns was an affidavit of the county clerk stating that his former abstract was incorrect and erroneous, and also further stating that the new or supplemental returns were the correct abstract of the votes in Haskell county for representative, cast at the election on the 8th of November, 1892. At the time that the state board canvassed the abstract of the county clerk of the 12th of November, 1892, the members thereof had no notice from Joseph Rosenthal, or anyone else, that the returns were incorrect, or in any way defective. It seems to be conceded in this case that, in canvassing such returns, they acted in good faith. No misconduct is charged. After the supplemental returns were received by the secretary of state, on the 19th day of December, 1892, no request was made, before the commencement of this action, by Joseph Rosenthal, or anyone else, that the board should reconvene or examine the additional returns and affidavit of the county clerk.

It was urged upon the hearing of this case, upon the part of the defendants, that this court has no jurisdiction to inquire into the matters presented, because the constitution of the state ordains that "each house shall be judge of the elections, returns and qualifications of its own members." This court is not, in a proceeding of this kind, a contest court, and, of course, cannot go behind the returns and hear and determine whether Rosenthal or Stubbs received legal or illegal votes, or whether any frauds were committed at the election to the prejudice of either candidate. But this court has jurisdiction in *mandamus* to control, in certain cases, a

1. Mandamus— canvassing board.

canvassing board, whether that board be a township, a city, a county or a state canvassing board. In case the board refuses to issue a certificate of election to the person receiving the highest number of votes, upon a

duly-authenticated abstract on file in the office of the secretary of state, and the relief by *mandamus* is withheld, the party aggrieved can have no remedy whatever to obtain his certificate. The person who has, upon the certified abstract, the greatest number of votes, is entitled to a certificate, and this cannot be awarded by the legislature, or either branch thereof. A certificate of election has some value. It is the *prima facie* evidence of the election of the person holding it to the office claimed. (*The State v. Carney*, 3 Kas. 88; *The State, ex rel., v. Buckland*, 23 id. 259; McCr. Elect., § 509; Cush. Leg. Ass., § 229.) Where a canvassing board wrongfully neglects and refuses to canvass returns which are regular in form, as a general rule, the courts may, by *mandamus*, compel the board to canvass and declare the result upon the face of the returns; and if a canvass has been wrongfully or improperly made, and the board has adjourned *sine die*, this court may compel it to reassemble and make a correct canvass of all the returns before it at the time of the first canvass. (*Lewis v. Comm'rs of Marshall Co.*, 16 Kas. 102.)

If a person, upon the face of the returns, is entitled to the certificate of his election, except in special instances, where wrong or injustice will be done, the courts have power to reach the officers composing the delinquent board by writ of *mandamus* and compel them to action, and, if necessary, may compel them to reconvene and recanvass. Therefore, if there was nothing in this case but the question of jurisdiction of this court, the plaintiff would be entitled to the relief claimed by him. But it appears in this case, from the records of the board of state canvassers, that the board, on December 1, 1892, long before what purported to be corrected returns from Haskell county were filed with the secretary of state, had completed its labors, declared the result against the plaintiff, and finally adjourned. A writ of *mandamus* "may be issued to compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust, or station." (Code, § 688.)

"A want of a 'plain and adequate' remedy in the ordinary

course of the law is an essential prerequisite to the issuance
of the writ in every case, but an equally essential prerequisite
is an omission on the part of the defendant to perform the act
required of him.    The writ, whether alternative
2. Writ—con-     or peremptory, must not only show the obligation
   tents.
of the defendant to perform the act, but must also
show his omission to perform it." (*The State, ex rel., v. Car-
ney,* 3 Kas. 90.)

"If the board may be compelled to reassemble and canvass
the returns of the election, it would seem that it might vol-
untarily do so. · *Mandamus* is employed to enforce the per-
formance of a duty; and since it is a duty, it certainly may
be performed by the officers without the command or com-
pulsion of the court.    It is held that *mandamus*
3. Will not lie,   will not lie to compel an officer to do an act
   when.
which, without its command, it would not have
been lawful for him to do." (*The State, ex rel., v. Comm'rs of
Kearny Co.,* 42 Kas. 739.)

If the board of state canvassers had discharged all of its
duties which the law especially enjoined upon it, before its
final adjournment on the 1st day of December, 1892, then no
writ of *mandamus* can issue, because there would be the per-
formance of no duty to enforce.

"A canvassing board, having once counted the votes and
declared the result according to law, has no power or author-
ity to make a recount.    When this duty is once
4. Board—pow-    fully performed, it is performed once and forever,
   erless after
   adjournment.    and cannot be repeated.    To suppose that it could
be renewed, that the canvass of one day could be repeated the
next, and counter certificates be issued to different contestants
as new light or influence was brought to bear upon the mind
of the clerk, would render the whole proceeding a farce."
(McCr. Elect., 3d ed., § 232; *Bowen v. Hixon,* 45 Mo. 340;
*Clark v. Buchanan,* 2 Minn. 346; *The State v. Donnewirth,*
21 Ohio St. 216; *The State v. Stewart,* 26 id. 216.)

If a canvassing board, having concluded its labors and fi-
nally adjourned, has no power or authority to reconvene and
recount, the courts, under the provisions of the statute, can-
not by *mandamus* compel the board to reassemble or give it
any power so to do.    It is, however, contended upon the part
of Rosenthal, that as the statute requires the county clerk of

Haskell county to make out an abstract of the votes for representative, and, after having been signed and certified to by him, to deliver the same by mail to the secretary of state, and as the first returns were not true, because they incorrectly stated the votes of each of the candidates, no valid abstract was received from Haskell county prior to December 19, 1892, and, therefore, as no true abstract or returns were received, this court may compel the board of state canvassers to reassemble and complete its work by canvassing the later (or supplemental) returns. If no abstract from Haskell county had been received by the secretary of state before the final adjournment of the board, on December 1, 1892, and if the state board had had no abstract or returns before it from Haskell county to act upon, it is possible that, under the decision of *Lewis v. Comm'rs of Marshall Co.*, 16 Kas. 102, *mandamus* would lie, upon the ground that only a partial canvass had been made. But that is not this case. An abstract of the votes for a member of the house of representatives, signed and certified by the county clerk, properly indorsed and directed to the secretary of state, was received by him and placed before the state board of canvassers during its proceedings in November. That abstract was incorrect, but it came from the proper officer; it was signed and certified by the proper officer. It was duly authenticated. It was not challenged or objected to. The members of the state board of canvassers had no notice or knowledge, at the time they were considering it, that it was incorrect or defective. Upon the face of the returns, they appeared to be in full compliance with the provisions of the statute. There was nothing in the returns, or in the manner in which they were transmitted or received, to cause suspicion, or to demand any other action thereon than usual and customary in such cases. The state board accepted the returns as truthful, passed upon them as such, and declared the result therefrom. It is well settled that the duties of canvassing officers are purely ministerial, and extend only to the counting up of the votes, and awarding the certificate to the person having the highest number.

They have no judicial power. (*The State, ex rel., v. Marston,* 6 Kas. 524; McCr. Elect., 3d ed., § 226.) As was said by Hoar, J., in *Luce v. Mayhew,* 13 Gray (9 Mass.), 83:

"They are not made a judicial tribunal, nor authorized to decide upon the validity or the fact of the election, in any other mode than by an examination of the 'returns' made to them according to law. They are not required or authorized to hear witnesses, or weigh evidence. They have no power to send for persons or papers. If one result appears upon the returns, and another is the real truth of the case, they can only act upon the former. If they have not done their duty, the remedy of the person actually elected to the office is not to be sought in a *mandamus.* This court has no power to direct public officers to do any more than their duty, or anything different from their duty."

Considering all the facts and circumstances of this case presented upon the trial, as no fraud, wrong or other official misconduct is imputed to the members of the state board of canvassers, or either of them, in receiving and counting the returns complained of, we must hold that they did not improperly reject any returns, or refuse to canvass any returns. When the board adjourned on the 1st day of December, 1892, the members thereof had fully discharged all of their duties; and it is too late now to say that they can voluntarily, or by compulsion, meet again as canvassers, to examine and pass upon the returns of the election of November, 1892. As a body, the board of state canvassers is *functus officio* — officially dead. It has no power of resurrection so as to consider the returns of the election of November, 1892, and this court cannot animate its dead body with the breath of life. Not only has its power in the premises ended, but its successors have no authority to reassemble or act again upon the election returns.

5. When officially dead—reassembly.

If it be said that this leaves Rosenthal without any remedy, and that the law in some way ought to furnish him a remedy for the wrong committed against him, we answer that, if this be true, it is the fault of the legislature, not the fault of the state board of canvassers, nor of the courts. But it is not wholly true. While Rosenthal may not obtain from the state

board his certificate, *yet he has a remedy before the house of representatives*, even if not a complete one. The jurisdiction of each house to decide upon the elections, returns, and qualifications of its own members is clearly given by the constitution and the statutes. That body, with the general consent of its members, can admit him to his seat at once, or, if it so determines, it can delay his admission until full investigation is had of his claims. It may, it is true, act arbitrarily and refuse him his legal rights, but this is hardly probable. This proceeding, if successful, would have only given him the certificate — the *prima facie* written title to the office. The proceeding in this court is not a contest between Rosenthal and Stubbs, nor can we try the title to the office. The house of representatives has the exclusive power to decide who have been elected members to its body. Rosenthal has already commenced his contest before that tribunal. The house has full and ample jurisdiction over the office — the substance he is seeking — even if it cannot give him a certificate, the paper title. If he has been elected representative, as it seems to be conceded, it should be the wish and desire of every honest and patriotic citizen of the state that the will of the people of his county, as expressed by their ballots, should be carried out, and that, as speedily as possible, he be permitted to occupy his place as representative. No party desiring the support of the good people of the state can, for partisan or political purposes, refuse him his seat merely because the clerk of Haskell county has made a mistake in his abstract or returns. The clerk has attempted to make some reparation by filing with the secretary of state corrected returns, with his affidavit supporting the same. Most certainly, if we saw any way in which this court in this proceeding could properly and in accordance with legal principles grant Rosenthal a certificate, we would gladly do so. Under the limitations of the constitution and the provisions of the statutes, we are powerless. The board of state canvassers, having finally adjourned on December 1, 1892, is powerless, and its successors are equally so. The house of representatives can rectify the serious mistake

of the county clerk which has deprived Rosenthal of his certificate. No other tribunal or body can now do so. That the house will act promptly and justly in the premises, we have the fullest confidence.

The peremptory writ of *mandamus* prayed for will be refused.

All the Justices concurring.