ENRIQUE MATTA, demandante y apelado, *v.* LA JUNTA INSULAR DE ELECCIONES, demandada y apelante.

No. 3606.—*Visto:* Mayo 27, 1925. *Resuelto:* Julio 30, 1925.

1. MANDAMUS— JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO— PETICIÓN— OMISIÓN DE UN HECHO ESENCIAL—SUBSANACIÓN POR CONTESTACIÓN.—Faltando en una petición de *mandamus* un hecho esencial y expresándose éste en la contestación, si se prosigue a juicio y se dicta sentencia a favor del demandante, la omisión en la petición se considera subsanada por la contestación.

2. MANDAMUS—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO—PETICIÓN—SUFICIENCIA DE LA MISMA.—Examinada la petición de *mandamus* en el caso de autos *se resolvió:* que a falta de solicitud para mayor especificación dicha petición era suficiente.

3. MANDAMUS—NATURALEZA Y FUNDAMENTOS EN GENERAL—REQUERIMIENTO PREVIO—MANDAMUS PARA COMPELER EL RECUENTO DE VOTOS.—El derecho a solicitar un recuento de los votos de determinado municipio corresponde y lo tiene un miembro de la Junta Insular de Elecciones y no el peticionario en un *mandamus* presentado para obligar a dicha junta que verifique dicho recuento.

4. ELECCIONES—IMPUGNACIÓN—CARÁCTER DEL REMEDIO—CERTIORARI.—El remedio por *certiorari* concedido por el artículo 89 de la Ley Electoral como quedó enmendado por ley de 1924 (p. 35) no es exclusivo; cualquier otro auto que llene el objeto de una petición sirve igualmente como el *certiorari*.

5. MANDAMUS—MATERIAS Y OBJETO DEL REMEDIO—ACTOS Y PROCEDIMIENTOS DE FUNCIONARIOS PÚBLICOS, JUNTAS *(Boards)* Y MUNICIPIOS — CUESTIONES ELECTORALES.—El *mandamus* es el remedio adecuado para obligar a la Junta Insular de Elecciones a verificar el recuento de votos de un municipio; y el contar, a petición de cualquiera de sus miembros, el número de personas que votaron en un colegio electoral así como el recontar las papeletas en cualquiera de los colegios electorales, es un deber ministerial de dicha junta.

6. MANDAMUS—MATERIAS Y OBJETO DEL REMEDIO—ACTOS Y PROCEDIMIENTOS DE FUNCIONARIOS PÚBLICOS, JUNTAS *(Boards)* Y MUNICIPIOS — CUESTIONES ELECTORALES.—Si la petición para que se haga el recuento de los votos de un municipio se hace en tiempo por un miembro de la Junta Insular de Elecciones y ésta se niega a verificarlo, las cortes pueden, por *mandamus*, compeler a dicha junta a verificarlo.

SENTENCIA de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando con lugar solicitud de *mandamus,* sin costas. *Confirmada.*

*Hon. Attorney General, R. H. Todd Jr.,* y *C. Llauger Díaz,* abogados de la apelante; *Bolívar Pagán,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

La Junta Insular de Elecciones, la que, como veremos, es un organismo permanente, se reunió para considerar y revisar las elecciones de 1924. En diciembre 2, 1924, la referida junta procedió a hacer un recuento de los votos emitidos en el municipio de Fajardo, y ni en esa fecha ni inmediatamente después hubo ninguna objeción, solicitud o recusación formulada en cuanto a los resultados en dicho municipio. La objeción o petición, sin embargo, se hizo en diciembre 29, 1924 cuando la Junta Insular había completado un escrutinio y recuento para toda la Isla pero antes de que la junta hubiera hecho su informe al Gobernador como lo exige la ley. Como la junta se negó a hacer el recuento o escrutinio de los votos de dicha municipalidad los peticionarios presentaron una solicitud para que se librara un auto de *mandamus.* La Corte de Distrito de San Juan oyó la petición y la prueba y ordenó en efecto a la Junta Insular de Elecciones que hiciera un recuento de votos emitidos en dicha municipalidad. Puede decirse que algunas de las principales cuestiones levantadas en esta apelación, en tanto son

meritorias, se fundan en la teoría de que las objeciones debieron haberse hecho en diciembre 2 y que las que se hicieron en diciembre 29 eran tardías.

[1] El primer señalamiento de error apenas si es meritorio. En él se ataca la suficiencia de la petición para mostrar un debido requerimiento a la Junta Insular para hacer un recuento. La misma contestación de la Junta Insular de Elecciones muestra que se hicieron objeciones formalmente en diciembre 29 por un miembro de la Junta que estaba autorizado. La alegada tardanza de la objeción se trata en otro señalamiento de error. En *Domínguez* v. *Porto Rico Railway, Light & Power Co.*, 19 D.P.R. 1101, resolvimos que cuando un demandante prosigue a un juicio y se dicta sentencia a su favor, si falta en la demanda una alegación esencial que se expresa en la contestación las omisiones de dicha demanda se consideran subsanadas por la referida contestación. Esta doctrina fué ratificada en el caso de *Viñas* v. *Gandía & Co. et al.*, 25 D.P.R. 218.

[2] Sostenemos que a falta de una solicitud para mayor especificación una petición es suficiente si describe un error en el recuento de un municipio y alega ''que un miembro de dicha Junta Insular de Elecciones, antes de terminarse y después de comenzar los trabajos de dicha junta en relación con la práctica del escrutinio de dicho precinto, y en relación con dichas elecciones, y en sesión abierta y formal de dicha junta, hizo la petición de que se contaran el número de personas que votaron en los distintos colegios de dicho precinto cuyas referidas contradicciones acumuladas exceden de cien, y que dicha junta se negó a contar dicho número de personas según fué solicitado por dicho miembro; y que además dicha junta se negó, a pesar del requerimiento hecho a la misma en sesión abierta y formal por un miembro de la misma, a recontar todas las papeletas de los respectivos colegios electorales de dicho precinto cuyas contradicciones mencionadas exceden de cien y pueden alterar y

afectar el resultado de la elección en relación con dichos candidatos."

[3] Además, si no era demasiado tarde hacer una objeción en diciembre 29, entonces, como de la prueba apareció claramente que la objeción se hizo en esa fecha, el caso caería dentro del artículo 142 del Código de Enjuiciamiento Civil que prescribe que la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes.

Al discutir el primer señalamiento de error insistió también el apelante en que no constaba que los peticionarios habían hecho el debido requerimiento a la junta, pero el apelado contestó muy bien diciendo que el derecho a hacer objeción lo tiene un miembro de la junta y que el Sr. Bolívar Pagán representaba suficientemente al peticionario.

[4] El segundo señalamiento de error alega que el mandamus no procede toda vez que el peticionario tenía un remedio adecuado en la ley. La teoría es principalmente que el artículo 89 de la Ley Electoral como quedó finalmente enmendado en el año 1924 confiere un remedio exclusivo por *certiorari*. La parte pertinente de dicho artículo es como sigue:

*"Y disponiéndose, además,* que el resultado del escrutinio de unas elecciones, según se declarare por la Junta Insular de Elecciones, será definitivo, a menos que fuere impugnado por *certiorari* u otro procedimiento legal autorizado, que se interponga dentro de quince días después de la fecha de la publicación del resultado de ese escrutinio ante una corte de competente jurisdicción, y por la presente se autoriza en esos casos el procedimiento de *certiorari* en la corte de distrito de San Juan. . . . ." Leyes de 1924, págs. 35, 37.

Estamos satisfechos de nuestro análisis de las autoridades citadas por la apelante, que cuando las cortes dicen que el mandamus no procede por existir otro remedio suficiente, dichas cortes están hablando de un remedio especial estatutorio, por ejemplo, como el que existía anteriormente en Puerto Rico, por el cual se prescribía una impugnación. No

existe ahora ningún remedio especial en Puerto Rico excepto el que se confiere por el artículo 89, *supra.* Este artículo autoriza un procedimiento por certiorari u otro procedimiento legal. De ahí que cualquier otro auto que llenara el objeto de una petición sirve igualmente como el *certiorari.* La jurisdicción especial conferida a la Corte de Distrito de San Juan es en adición a cualquier otro remedio que una parte agraviada pudiera tener en alguna otra parte de la Isla. En el caso de *El Pueblo* v. *Oms,* (pág. 455), resolvimos que cuando un fraude electoral se cometía en alguna parte de la Isla el remedio adecuado estaba a la disposición de la persona agraviada y que cuando se cometía fuera de San Juan la persona perjudicada tenía el remedio adicional de establecer un recurso de *certiorari* en San Juan.

[5] Para demostrar que el mandamus es el remedio adecuado y que el deber que trata de hacerse cumplir aquí era uno ministerial, adoptamos el razonamiento de la corte inferior, a saber:

"Nuestra Legislatura al aprobar la enmienda a la Sección 89 de la Ley Electoral (véase Ley No. 1 de 1924), y en la que autoriza el procedimiento de certiorari para revisar los actos de la Junta Insular de Elecciones, no ha dispuesto que éste sea el único procedimiento que pueda utilizarse; lo contrario surge claramente de las propias palabras de la ley, que dice así:

" '. . . . El resultado de escrutinio de unas elecciones, según se declarase por la Junta Insular de Elecciones y publicase por el Superintendente General de Elecciones será definitivo, a menos que fuere impugnado por certiorari u otro procedimiento legal autorizado.'

"Es deber ministerial de la junta, de acuerdo con la mencionada sección 89 de la Ley Electoral, el contar, a petición de cualquier miembro, el número de personas que votaron en un colegio electoral, según resulte de las listas de votantes, cambiando la entrada en su hoja de cotejo de manera que corresponda con el resultado de dicho escrutinio. Deberá asimismo recontar las papeletas en cualquier colegio electoral en que hubiese contradicción en las entradas

de una hoja de cotejo (ya sea en la forma en que fué trasmitida por la junta de colegio, o según se hubiere corregido por la Junta Insular de Elecciones), entre el número de personas que votaron, según resulta de las listas de votantes y el número de papeletas encontradas en la urna del colegio electoral al cual corresponde la hoja de cotejo, o entre el número de papeletas distribuidas, según consta en el sumario de dicha hoja de cotejo, si esa diferencia es suficiente por sí sola, o en combinación con otra diferencia referente al voto para un mismo candidato, para afectar el resultado de la elección.''

Que el auto de mandamus es el remedio adecuado para obligar a las Juntas a verificar el recuento de votos, a falta de otra autoridad especial, aparecería de las siguientes autoridades seleccionadas en parte de una larga lista de citas en las páginas 8 y 9 del alegato del apelado: Ley de Mandamus, sección 2, Estatutos Revisados, 1329; *Brewster v. Sherman,* 195 Mass. 222; 18 R.C.L. 275, *et seq.;* 38 Corpus Juris, 719 *et seq.*

En el tercer señalamiento de error la apelante discute más o menos las mismas cuestiones que hemos considerado en el segundo señalamiento de error. Anticipándonos un poco, quizás, diríamos que si las objeciones se hicieron oportunamente la Junta Insular de Elecciones no estaba *functus officio* por su informe al gobernador; que el auto perentorio de mandamus no pone necesariamente a los peticionarios en el cargo sino meramente ordena a la Junta hacer lo que dejó de hacer antes, o sea, verificar un recuento de los votos.

[6] El cuarto señalamiento de error es el siguiente:

''La corte erró al dictar su sentencia, porque la misma confiere nueva autoridad a la Junta Insular de Elecciones, contra lo expresamente provisto en la Ley de Mandamus.''

Convenimos enteramente con la apelante en que cuando una junta ha terminado su trabajo y hecho un informe como requiere la ley y no recaía en ella ningún deber de hacer un recuento durante el tiempo en que estuvo constituída, que el mandamus no puede conferir a dicha junta una nueva au-

toridad.   También somos de opinión de que a pesar del hecho de que la Junta Insular de Elecciones es un organismo permanente si presentó su informe al Gobernador sin que se hiciera ninguna objeción, que el mandamus no procedería y si la corte tenía discreción el auto de *mandamus* no debía expedirse.   La cuestión en este caso es si por virtud de la objeción de un miembro de la junta dicha junta tenía que cumplir un deber ministerial haciendo el recuento de los votos del municipio de Fajardo.   El artículo 1 de la Ley Electoral enmendado prescribe entre otros particulares lo siguiente:

"Se establece una junta permanente de elecciones que se compondrá de un Superintendente General de Elecciones, como presidente, quien será designado por el Gobernador, con el consejo y consentimiento del Senado de Puerto Rico, y de dos personas representando los dos partidos políticos principales de la Isla según más adelante se definen en la presente, y de un substituto de cada uno de dichos miembros, que serán nombrados por el Gobernador a propuesta de los organismos directivos centrales de dichos partidos. . . . ." Leyes de 1924, pág. 3.

Por un razonamiento general estamos satisfechos de que la Junta Insular de Elecciones, si la objeción no se hizo demasiado tarde, tenía un deber que cumplir que no lo hizo. Particularmente aplicable es la cita hecha por la corte inferior del caso de *Rosenthal* v. *State* (50 Kan. 129, 32 P. 129, 19 L.R.A. 157), a saber:

"Cuando una junta de escrutinio o elecciones (canvassing board) ilegalmente no considera o se niega a considerar documentos electorales que son válidos por su forma, como regla general, las cortes pueden, por mandamus, compeler a la junta a considerarlos y declarar el resultado según aparezca de la faz de dichos informes; y si el recuento o escrutinio ha sido ilegal o erróneamente hecho y la junta se ha declarado en receso 'sine die,' esta corte puede obligarlos a reunirse de nuevo y a hacer un informe correcto de todos los documentos que estuvieron ante ella en el momento de verificar el primer escrutinio."

Aparecería que la junta dictó cierta clase de resolución al efecto de que las objeciones autorizadas por la Ley Electoral se harían al tiempo de contarse los votos de determinado municipio. Si tal resolución se hizo por la junta, estamos convencidos de que no estaba autorizada por la ley y no tenía la fuerza de ley. El artículo 89 concede el derecho a un miembro de la junta a hacer una objeción o petición. El término no está limitado cuando la junta está en sesión activa y antes de hacer sus informes al Gobernador. En las leyes de 1923, pág. 560, el artículo 12 de la Ley de Elecciones parece estar enmendado para autorizar a la Junta Insular de Elecciones a aprobar reglas y reglamentos para llevar a efecto las disposiciones de la Ley Electoral, pero dichas reglas y reglamentos, para que tengan fuerza de ley, deben ser aprobados por el Gobernador y promulgados por el Secretario Ejecutivo de Puerto Rico.

[7] No insistimos de un modo muy particular en lo siguiente, pero aparecería que el señor Bolívar Pagán que presentó la objeción y solicitó un recuento, estaba bajo la impresión de que él tenía que esperar hasta que se terminara el cómputo de toda la Isla, antes de poder solicitar el recuento del municipio de Fajardo. La prueba indica en cierto modo que el Sr. Bolívar Pagán tuvo esta idea debido a la actuación de la junta al formularse la objeción al cómputo de San Juan, aunque convenimos con la apelante en que la junta no hizo tal resolución formal.

[8] El quinto señalamiento de error carece de una especificación clara y nos hemos anticipado hasta cierto punto.

El sexto, séptimo y octavo señalamientos también se refieren a cuestiones de hecho que fueron suficientemente discutidas y resueltas por la corte inferior o por nosotros mismos y en las cuales no encontramos ningún error.

*Debe confirmarse la sentencia apelada.*